Donald RATLIFF, Petitioner,

v.

BENEFITS REVIEW BOARD, Director, Office of Workers' Compensation Program, U.S. Department of Labor, Respondents.

No. 85–3536.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 14, 1986.

Decided April 24, 1987.

Adams totally disabled due to pneumoconiosis.

Julian N. Henriques, argued, Legal Asst. Foundation of Chicago, Jean Goodwin, Legal Asst. Foundation of Chicago, Chicago, Ill., for petitioner.

J. Michael O'Neill, Roscoe C. Bryant, III, U.S. Dept. of Labor, Washington, D.C., Thomas L. Holzman, argued, for respondents.

Before ENGEL, JONES, and KRUPANSKY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Petitioner, Donald Ratliff, appeals the Benefits Review Board's (Board) denial of his claim for black lung disability benefits. This appeal requires us to determine what constitutes comparable and gainful employment sufficient to rebut an interim presumption of black lung disability, for the Administrative Law Judge (ALJ) and the Board denied petitioner benefits on the basis that petitioner's job as a factory foreman was comparable to his former coal mine work. For the reasons discussed below, we vacate the decision of the Board and remand the case for further consideration.

For ten years, beginning in 1951, Mr. Ratliff worked in Kentucky coal mines as a coal loader/motor runner. He spent six to eight hours a day shoveling coal while crouched on his hands and knees in a mine shaft. The job involved heavy lifting and great exposure to coal dust. After leaving the mines in 1961, Mr. Ratliff worked at a factory where he pressed buttons to operate machines that made small plastic boxes. Subsequently, he took a job in a steel and wire factory, where he was a foreman at the time of the ALJ's hearing. This job required him to supervise employees operating steel-cutting machines and occasionally required him to "mash buttons" on the machinery. This work was not dusty or dirty, nor did it require him to do any lifting or carrying.

From 1978 through 1980, Mr. Ratliff underwent a series of tests designed to detect pneumoconiosis (black lung disease). The ALJ found that the December 1980 blood gas study met the table values of 20 C.F.R. § 727.203(a)(3) (1986), and so Mr. Ratliff was initially presumed to be totally disabled from pneumoconiosis arising out of his coal mine work. The ALJ found that this study demonstrated that "from a respiratory standpoint, Mr. Ratliff could not return to the mines and load coal as he did in 1961." The testimony of Mr. Ratliff and his doctor supported such a conclusion; they both stated that Mr. Ratliff has shortness of breath when engaged merely in the usual activities of daily living.

Despite Mr. Ratliff's establishment of an interim presumption of disability, the ALJ held that he was not entitled to benefits:

> Nevertheless, I do find that claimant's current job as a foreman where he earns $335 per week requires skill and certain abilities far greater than those he utilized when he loaded coal underground. It is my opinion that the physical demands of his current job are far less than the demands for loading coal.
>
> Even so, it is my determination that he is performing caparable [sic] and gainful work which precludes a finding that he is now totally disabled.

App. at 4.[1] Ratliff appealed the denial of benefits to the Board, which held that the

---

1. The regulations governing the award of benefits under the Black Lung Benefits Act provide that medical evidence establishing an interim

ALJ had properly balanced the higher skills and abilities required against the lower physical exertion required by the current job in order to find the current job comparable to the former mining job. The Board therefore affirmed the denial of benefits. However, one of the judges on the Board noted in a separate concurrence that he continued to disagree with such a balancing test, believing instead that *each* element of the jobs—skills, abilities and physical exertion—must actually be *comparable* in order to support a denial of benefits.

The Board's "balancing test" seems to assume that if a present job is "better" than the former mining job, then it is "comparable" for the purpose of denying benefits.[2] To determine whether the Board's "balancing test" is an appropriate method of determining comparability under the Black Lung Benefits Act (Act), 30 U.S.C. § 901 *et seq.* (1982), we look to the actual wording of the Act, to its legislative history, and to decisions by the Supreme Court and this circuit. All of these sources indicate that the Board's test for comparability is incorrect in light of the purpose for comparing former and current work.

Although Congress has allowed the administration of the Black Lung Benefits Act to be governed largely by regulations promulgated by the Secretary of Health and Human Services and the Secretary of Labor, it has limited the ways in which "total disability" may be defined. One means of determining disability under the Act is to examine current employment:

(A) In the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled *when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine* or mines in which he or she previously engaged with some regularity and over a substantial period of time:

(B) Such regulations shall provide that (i) a deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled; and (ii) in the case of a living miner, *if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work,* such worker's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled.

30 U.S.C. § 902(f)(1)(A) & (B) (1982) (emphasis added).

■ The legislative history of this test for total disability reveals that Congress explicitly rejected the sort of disability test used under the Social Security Act—"inability to engage in any substantial gainful activity." S.Rep. No. 743, 92nd Cong., 2d Sess. 2, *reprinted in* 1972 U.S.Code Cong. & Admin.News 2305, 2320. Instead, the current test for disability under the Black Lung Benefits Act was intended to "clearly establish the principle that a coal miner who is prevented from engaging in *his usual mining occupation* will be considered to be totally disabled." *Id.* at 2321 (emphasis added). Thus, a miner is totally disabled unless he is currently working or is capable of working at a job "involving skills and abilities *closely comparable*" to those of his former mine work. J.Conf.

presumption of total disability may be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.-412(a)(1) of this title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis. 20 C.F.R. § 727.203(b)(1)-(4) (1986). In this case, the ALJ held that subsection (1) rebutted Mr. Ratliff's initial showing of total disability.

**2.** This attitude was reflected by the Board's counsel at oral argument when he stated that *any* better-paying job would justify a denial of benefits, even if the former miner were confined to a hospital bed to perform that job.

Rep. No. 1048, 92nd Cong., 2d Sess. 2, *reprinted in* 1972 U.S.Code Cong. & Admin.News 2338, 2339 (emphasis added).

Just how closely comparable to a former mining job Congress intended that a current job be in order to preclude a finding of disability is reflected by the fact that even another mining job may not be so comparable as to controvert a finding of disability. In 1978, Congress, decrying "the administrative practice of denying claims solely on the basis of employment status without regard to the type of work being performed," amended section 902(f)(1)(B)(ii), quoted *supra.* H.R.Conf.Rep. No. 864, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Admin.News, 237, 308, 310. This amendment was based upon the suggestion of the House that benefits should not be denied on the basis of mining employment if

> (1) the location of such employment was recently ... changed to a mine area having a lower concentration of dust particles, (2) the nature of such employment was changed so as to involve less rigorous work, or (3) the nature of such employment was changed so as to result in the receipt of substantially less pay.

H.R.Rep. No. 151, 95th Cong., 2d Sess. 11, *reprinted in* 1978 U.S.Code Cong. & Admin.News 237, 247. Thus, Congress clearly felt that if a miner's health was affected in such a way that his present job reflected an inability to breathe as much dust or do as heavy work, then that miner was entitled to benefits under the Act. Although Congress included reduced pay among the indications of disability despite current mine employment, it did not focus on economic suffering as determinative of disability. Indeed, the statute as passed contains not one word about economic status, but rather hinges a finding of disability upon a miner's "reduced *ability to perform* ...." 30 U.S.C. § 902(f)(1)(B)(ii) (emphasis added). Consequently, it appears that Congress meant for current employment to be an indicator of health impairment, not of economic impairment.

That jobs should be compared for the purpose of determining health impairment is strongly suggested by the Supreme Court's decision in *Usery v. Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). There, the Court addressed a number of constitutional claims challenging the award of benefits under the Black Lung Benefits Act. In the course of its decision, the Court noted that Congress need not link the award of benefits to the destruction of earning capacity, but instead can compensate miners for the impairment of health alone. *Id.* at 23, 96 S.Ct. at 2896. The Court specifically held that section 902(f)(1) is not unconstitutional "because it provides for the compensation of former miners who might well be employable in other lines of work, and who therefore are not truly disabled by their mining-generated afflictions." *Id.* at 21, 96 S.Ct. at 2895. The Court went on the compare the Black Lung benefits scheme to workers' compensation schemes, "providing benefits for injuries not depriving the employee of his ability to work." *Id.* Accordingly, the Supreme Court has implied that the purpose of looking at current employment is to see whether the person is as healthy as ever, not to determine whether the person has suffered economically because of an inability to work.

This circuit has similarly interpreted the purpose of comparing current work to former mine work. In *Miniard v. Califano,* 618 F.2d 405 (6th Cir.1980), this court held that even the same mining job with the same work requirements was not comparable for the purposes of rebutting a presumption of disability when the claimant testified that he had much more difficulty performing the work than in the past. The court considered the claimant's reduced work capacity to be the relevant consideration in comparing current work to past work. *Id.* at 409, 410. Hence, this court appears to have adopted a strict test of comparability that relies not on similarity of earnings or even similarity of duties, but rather on the similarity of the claimant's demonstrated capacity to do the former mine work.

This court's decision in *Shamrock Coal Co. v. Lee,* 751 F.2d 187 (6th Cir.1985), is not inconsistent with such a comparability

test, for there Judge Engel pointed out that "[b]enefits are to be based on an inability to work due to disability not due to unemployment." *Id.* at 190. Thus, whether comparable jobs were actually available to a claimant was irrelevant; the issue was whether the claimant was disabled from performing those jobs. This reasoning, like that in *Miniard,* indicates that a determination of physical well-being rather than economic well-being is the purpose of comparing current work to former mine work.

With this purpose in mind, it is obvious that neither an earnings test, as proposed at oral argument, nor a "balancing test," as proposed in the Board's decision, is an appropriate measure of comparability. Even in the context of workers' compensation, where *"earning* capacity" is the crucial issue, courts have repeatedly pointed out that because so many factors may influence actual earnings following disablement, earnings are merely one of the factors that may be relevant to a determination of a worker's impairment. *See, e.g., Maxey v. Major Mechanical Contractors,* 330 A.2d 156 (Del.Super.1974) (1973 postinjury earnings adjusted to 1969, the date of the injury); *Taber v. Tole,* 188 Kan. 312, 362 P.2d 17 (1961) (manual laborer who received education and became a teacher should not have had reduction in compensation); *cf. Echo v. DOWC,* 744 F.2d 327 (3rd Cir.1984) (earnings one of several factors). *See generally* W. Malone, M. Plant & J. Little, Workers' Compensation and Employment Rights 348–349 (2d ed. 1980). In other words, to prove that a claimant now earns more than he did as a miner may demonstrate more about economic conditions or the miner's ability to retrain himself than it does about his health. Likewise, to show under a "balancing test" that claimant now uses "higher" skills and has more responsibility demonstrates nothing about his physical health. As Congress has indicated time and time again, capability for work different in nature from mining work—even if the work would be "better"—should not preclude a finding of disability. *See, e.g.,* Black Lung Legislation, 1971–72: Hearings on S. 2675, S. 2289, and H.R. 9212 Before the Subcomm. on Labor of the Senate Committee on Labor and Public Welfare, 92nd Cong., 1st and 2nd Sess. 110 (1972) (Testimony of Sen. Robert C. Byrd) ("let us stop telling a man whose lungs have failed him, or predictably will do so, that he can qualify for a job operating some nonexistent elevator, or selling some product in a highly competitive market").

■ We conclude that the appropriate means for determining whether a claimant is engaging in work "requiring skills and abilities comparable to those of any employment in a mine" is to examine whether the skills and abilities now used are "similar" or "equivalent" to those used in the mine. This is, quite simply, the dictionary definition of "comparable," *see* Webster's Ninth New Collegiate Dictionary 267 (1986), which also seems to us to capture the intent of Congress. For instance, shoveling coal is similar to shoveling gravel and dissimilar to reading employment applications. If a person formerly had the ability to shovel heavy coal in a coal mine, and is now shoveling gravel in a dusty gravel pit, then it might be an indication that the person is not really suffering from a physical disability. If, however, the former coal shoveler is now the personnel manager for a gravel pit, there is no indication of the person's ability even to rise from a wheelchair.

■ Applying this definition of comparability to the case before us, we conclude that Mr. Ratliff's current job is not comparable to his former coal mine work. Supervising employees and occasionally hitting buttons is not similar to crouching in a dusty mine shaft and shoveling coal. The fact that he can work as a foreman does not indicate that he is physically sound, and, indeed, the ALJ found that he is too ill to return to work in the mines.

Because the ALJ has already specifically found that Mr. Ratliff's present job requires "far greater" skills and abilities and "far less" physical exertion, we need not remand this case for a determination under 20 C.F.R. § 727.203(b)(1) of whether Mr. Ratliff is doing "comparable," i.e., similar,

work—he is obviously doing completely different work from his former coal mine work. Nor need we remand for a determination under 20 C.F.R. § 727.203(b)(2) of whether Mr. Ratliff is *able* to do comparable work, for the ALJ has already found that he "could not return" to his former job on account of his pneumoconiosis. However, the Board contends that his disability could still be rebutted under subsections 727.203(b)(3) or (4), and so we will remand this case for further consideration under those subsections.

Accordingly, we REVERSE the order of the Benefits Review Board and REMAND for further proceedings consistent with this opinion.