**Robert PATE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Sahara Coal Company, Respondents.**

No. 87–1350.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 21, 1987.

Decided Dec. 2, 1987.

Harold B. Culley, Jr., West Frankfort, Ill., for petitioner.

Wayne R. Reynolds, Keefe & DePauli, P.C., Fairview Heights, Ill., Thomas L. Holzman, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondents.

Before BAUER, Chief Judge, and CUMMINGS and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This appeal by a former coal miner denied a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.*, requires us to interpret the word "comparable" in the section that provides that a miner "shall be considered totally disabled when pneumoconiosis [black-lung

disease] prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f)(1)(A). The statute goes on to explain that "in the case of a living miner, if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work, such worker's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled." 30 U.S.C. § 902(f)(1)(A).

In 1970 Robert Pate was 37 years old and was employed by Sahara Coal Company as the operator of a machine for cutting into a seam of coal. His job was to drive the machine and perform associated maintenance, mainly changing the machine's bits and oiling it. He was (and for the previous nine years had been) a miner within the meaning of the Black Lung Benefits Act. In August of that year, however, his right shoulder was crushed in a mine accident, disabling him from working in the mine. The next year he left Sahara Coal Company and began work as a mine inspector for the State of Illinois at a salary ($700 per month) approximately equal to what he had been receiving from Sahara. In 1980 he applied for disability benefits under the Black Lung Benefits Act. At the time of the hearing before the administrative law judge he was still employed by the State of Illinois as a mine inspector, at an annual salary of $32,000. The administrative law judge, although finding that Pate had black lung disease as a result of his work in the mines, held that Pate was not totally disabled, because his work as a mine inspector was comparable to the job that he had had at Sahara until his accident. The Benefits Review Board affirmed.

There might seem to be a more direct route to the administrative law judge's conclusion: any disability to do mine work stemmed from the accident in 1970 rather than black lung disease contracted, if at all, much later. However, we are not authorized to affirm an administrative decision on a rationale different from the agency's, *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, 63 S.Ct. 454, 459–60, 87 L.Ed. 626 (1943); *Illinois v. ICC*, 722 F.2d 1341, 1348–49 (7th Cir.1983), nor have we any desire to wrestle with the difficult question whether a person could be said to be disabled from black lung disease if both the disease and a completely unrelated condition were sufficient conditions of his disability. So we shall pass the question of causation by.

The statutory provisions quoted at the outset of this opinion make clear that to be totally disabled within the meaning of the Black Lung Benefits Act the applicant does not have to be incapable of doing any gainful work (as under the disability provisions of the Social Security Act); it is enough if he is incapable of doing the sort of work he did in the mines before the onset of his disease. So a coal miner crippled by black lung disease who is employed, whether by a coal-mining company or by any other firm or entity, private or public, as a nightwatchman or an elevator operator, is totally disabled within the meaning of the Act. The hard case is where, as in *Ratliff v. Benefits Review Board*, 816 F.2d 1121 (6th Cir.1987), the diseased miner's new job, though requiring less exertion, requires greater skills and abilities as evaluated by the market, and therefore commands a higher wage. In such a case it might seem that, far from being disabled in an economic sense, the former miner has improved his employment situation as a result of his disease. Yet the court in *Ratliff*, confronted by an applicant who after being disabled by black lung disease from working in a coal mine became a foreman in a steel and wire factory—a job requiring in the administrative law judge's opinion " 'far greater' skills and abilities" (*id.* at 1125) than his mining job—nevertheless held that he was totally disabled within the meaning of the statute, because black lung disease prevented him from returning to his job as a miner. The court gave no weight to considerations of relative earnings, in contrast to the Third Circuit, which in *Echo v. Director, Office of Workers' Compensation*, 744 F.2d 327, 331 (3d Cir.1986), had opined

that "compensation [should] be the prime criterion of comparability."

■ Resolving the difference in approach between the Third and Sixth Circuits would require us to decide whether the black lung benefits program is more like workers' compensation, in providing scheduled benefits as compensation for an impairment, or more like standard disability schemes, which seek to replace lost earnings. If the former, the Sixth Circuit is correct, and if the latter, the Third Circuit. But we find it unnecessary in this case to take sides. Unlike Ratliff, who "spent six or eight hours a day shoveling coal while crouched on his hands and knees in a mine shaft," 816 F.2d at 1122, a type of job to which his disease prevented his returning, Pate was a driver, who, after quitting his job because of an accident unrelated to black lung disease, became not a foreman in a factory but a mine inspector, in which capacity he continues to visit mines, to walk through them, etc. The jobs are not identical; the driver's job required greater exertion than the mine inspector's does. But the statute requires comparability, not identity, and we cannot say that the administrative law judge's finding that the jobs are comparable is unsupported by substantial evidence. The jobs are comparable in skills and abilities required, in status and responsibility, and, so far as the record reflects, in pay. (Pate states in his brief that if he were still working as a cutting-machine operator he would be receiving a wage of $44,000. This evidence was not presented to the Department of Labor, and we therefore cannot consider it. Pate does not tell us what his current salary as a mine inspector is; the figure of $32,000 is three or four years old.) The difference in required exertion appears to be small. Pate's job as a miner involved driving a machine; it was not manual labor. If the driver's and inspector's jobs are not within the limits of comparability, we find it hard to imagine a situation in which any impairment in a person's ability to exert himself would not be classified as total disability, even though it is apparent from the statute

that disease and disability are not intended to be synonyms.

AFFIRMED.