In the Matter of TWIN PINES COAL COMPANY, Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent,

and

Charles L. White, Real Party in Interest.

No. 86–1888.

United States Court of Appeals, Tenth Circuit.

Aug. 16, 1988.

Ronald E. Gilbertson, Kilcullen, Wilson and Kilcullen, Washington, D.C., for petitioner.

William E. Kenworthy, Denver, Colo., for respondent Charles L. White.

Nicholas J. Levintow (George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Solicitor, J. Michael O'Neill, for Appellate Litigation, Thomas L. Holzman, Asst. Counsel for Appellate Litigation, Diane Hodes, Atty., on the brief), U.S. Dept. of Labor, Washington, D.C., for respondent U.S. Dept. of Labor.

Before MOORE, ANDERSON and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

In this appeal the Twin Pines Coal Company ("Twin Pines") challenges the Benefits Review Board's decision affirming the grant of Black Lung Benefits to Charles L. White. The administrative law judge originally awarded the benefits because she found sufficient evidence to invoke the presumption that White had pneumoconiosis (black lung disease) according to the interim criteria at 20 C.F.R. § 727.203(a) and she did not find the presumption rebutted by any of the evidence or opinions offered at the hearing. The Benefits Review Board found that the ALJ's invocation of the presumption was based on substantial evidence and thus affirmed the award.

## I.

Subsection IV of The Federal Coal Mine Health and Safety Act, 30 U.S.C. §§ 901 to 945, provides a program of black lung benefits for qualifying miners. Part C of subsection IV, 30 U.S.C. § 931 to 945, specifies that in states which do not have worker's compensation benefits at qualifying levels for those suffering from pneumoconiosis who file for benefits after December 31, 1973, the black lung benefit will be paid by the claimant's employer. Twin Pines, as White's employer from 1958 to 1970 was assessed liability by the Department of Labor. It contested that determination before an ALJ and the Benefits Review Board. It seeks further review here.

This appeal revolves around the following facts. In July 1970, White, who had been in coal-related employment for approximately fifteen years prior to 1970, was involved in a mine accident which resulted in his total disability and for which he receives state worker's compensation benefits and Social Security disability payments.

Seven to nine years after this accident, White began to experience respiratory difficulties and in October 1979 he made application for federal black lung benefits. In connection with this application, White was examined by Dr. Charles F. Salerno, the consulting physician for the Department of Labor. During the course of this examination, White received a blood gas study, a chest x-ray, and a pulmonary ventilatory study. The blood gas study and the chest x-ray showed no signs of pneumoconiosis. The ventilatory study produced results which were sufficient to qualify White for the application of the interim presumption of total disability contained in the regulations by which the black lung benefits program is administered. Nonetheless, Dr. Salerno, in interpreting the test, gave his opinion that White's "restrictive ventilatory abnormalities [were] probably secondary to [his] previous traumatic injury to chest and back." He further indicated that this diagnosed condition was not related to "dust exposure in the patient's coal mine employment." R.Vol. III. Director's Exh. 7 at 4.

White was subsequently examined in May 1980 by Dr. Lawrence Repsher, who examined him at the request of Twin Pines. Dr. Repsher also took a chest x-ray and conducted ventilatory pulmonary tests and blood gas studies. Again, the chest x-ray and the blood gas study showed no indication of pneumoconiosis. Although Dr. Repsher testified that White did not sufficiently cooperate in the ventilatory study to make it valid for purposes of invoking the interim presumption, Repsher did interpret it to show that White suffered from "mild COPD" (chronic obstructive pulmonary disease) which he attributed to White's forty-two year history of cigarette smoking. As a result Dr. Repsher concluded that White did not suffer from pneumoconiosis. R.Vol. III. Director's Exh. 15 at 2–3; R.Vol. II at 83.

Finally, just before the hearing, Dr. John G. Buglewicz, a family practitioner who had treated White in the past for other ailments, learned in preparing to testify for other black lung claimants, that White was scheduled for a black lung benefits hearing. He contacted White and learned that he had not obtained counsel nor was he otherwise prepared to present his case. Buglewicz recommended counsel to White and, without examination, had White take another ventilatory study and a blood gas study one week before the hearing. The

results of the ventilatory study indicated, at least through a computer diagnosis, "severe restrictive lung disease," although Dr. Repsher testified after reviewing the tracings that White did not cooperate sufficiently in the course of the test to render it valid for diagnostic purposes.

The principal issue at the hearing was whether or not White established the applicability of one of the interim presumptions codified at 20 C.F.R. § 727.203. Under these regulations promulgated by the Secretary of Labor, "[a] miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis if ... (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease...." The same section further provides that "[i]n adjudicating a claim under this subpart, all relevant medical evidence shall be considered." At the hearing, all of the test results and physicians reports were admitted into evidence. Twin Pines objected to the admission of the ventilatory test conducted by Dr. Salerno, and the ventilatory test conducted at the instruction of Dr. Buglewicz, arguing that the tests did not qualify under the requirements of 20 C.F.R. § 410.430 because they did not contain a statement of the claimant's ability to understand directions and cooperate in performing the tests. The evidence was nonetheless admitted over Twin Pines' objection. In her findings of fact and conclusions of law, the ALJ invoked the interim presumption based on the ventilatory study which White completed for Dr. Salerno in October 1979.[1] Despite the report's failure to reflect the patient's cooperation and understanding in taking the test as is required by § 410.430 the judge found that the test's subsequent validation by Drs. Kennedy and Mitchell was sufficient to sat-

isfy the requirements of the regulations. The ALJ, however, refused to invoke the presumption based on either of the other two ventilatory studies.

On appeal the Benefits Review Board determined that there was substantial evidence upon which the ALJ invoked the presumption due to the qualifying ventilatory study taken for Dr. Salerno. Accordingly, it affirmed the grant of benefits.

Twin Pines challenges the award on four grounds. First, it argues that because White already receives total disability benefits from the Social Security Administration and the State of Colorado, he cannot now also receive total disability benefits under the black lung benefits program. Next, Twin Pines argues that the interim regulations containing the presumption under which White was awarded benefits had expired and were thus improperly invoked by the ALJ. Third, Twin Pines argues that the interim presumption was improperly invoked on the basis of the Salerno study because the ALJ did not adequately consider the opinion of Dr. Salerno that the study qualified due to a cause other than pulmonary disease. And, finally, Twin Pines argues that the ALJ's determination that White is totally disabled due to pneumoconiosis is not supported by "substantial evidence," and that even if it was, it was adequately rebutted at the hearing. Because we accept Twin Pines argument that the ALJ failed to adequately consider the opinion of Dr. Salerno, we do not reach the question of whether "substantial evidence" supported the invocation of the presumption. Rather, we remand to the Benefits Review Board for action consistent with this opinion.

## II.

■ The initial argument made by Twin Pines stems from the mine accident in 1970

---

1. 20 C.F.R. 727.203(a)(4) also provides for the invocation of the presumption in cases where "Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment." The ALJ determined that regardless of the 1979 ventilatory study, the presumption was adequately invoked here due to Dr. Buglewicz's "reasoned medical opinion"

that White was totally disabled due to pneumoconiosis. On appeal, without addressing the opinion of Dr. Buglewicz, the Benefits Review Board determined that there was substantial evidence upon which the ALJ invoked the presumption due to the qualifying ventilatory study taken for Dr. Salerno. Accordingly, we do not consider this second ground on which the ALJ invoked the presumption.

which ended White's mine employment. Twin Pines argues that because White was already completely disabled by the 1970 accident he cannot now be considered disabled as a result of pneumoconiosis; that is, a person can only be completely disabled once.

Despite some authority from the Sixth Circuit which apparently supports this proposition, *see Gastineau v. Mathews,* 577 F.2d 356, 360 (6th Cir.1978); *but see Singleton v. Califano,* 591 F.2d 383, 385 n. 2 (6th Cir.1979), a review of the cases, the statute, its legislative history, and its interpretation by the benefits review board, *see Olszewski v. The Youghiogheny and Ohio Coal Co.,* 6 BLR 1–521, 1–524 (1983) ("A claimant may be totally disabled due to a non-respiratory condition and at the same time be totally disabled as a result of a respiratory or a pulmonary impairment."), shows that the statute is intended to confer special benefits on miners who are disabled due to pneumoconiosis whether or not they are disabled from a different cause. Even when other causes are themselves independently disabling "[t]he concurrence of two sufficient disabling medical causes one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act." *Peabody Coal Co. v. Director, OWCP,* 778 F.2d 358, 363 (7th Cir.1985); *see also Singleton,* 591 F.2d at 385 n. 2 ("It is thus entirely possible that a miner will be eligible for one, the other, or both kinds of benefits. In the instant case, plaintiff's lay testimony and medical evidence indicated that his respiratory problems were independently disabling, regardless of the orthopedic difficulties.").

According to the legislative history of the Act and its amendments, Congress has explicitly considered and rejected the idea of offsetting federal black lung benefits against state or federal disability benefits paid for a disability other than pneumoconiosis.[2] The Act has always been understood as providing a separate federal benefit for those who were disabled due to pneumoconiosis.[3] Hence, in cases where a claimant who was initially disabled by other causes, but who subsequently develops disabling pneumoconiosis and qualifies for federal benefits, the claimant's receipt of state worker's compensation benefits or other federal benefits for total disability due to causes which are not accounted for by the statute does not bar the receipt of federal black lung benefits.

---

**2.** Originally, under Part B of the black lung benefits program a miner's benefit payment was reduced by any amount received from state worker's compensation programs. *See* Conf. Rep. No. 761, 91st Cong., *reprinted in* 1969 U.S. Code Cong. & Admin.News 2578, 2605. Such an offset was apparently never intended for Part C. In 1978 Congress amended Part B to conform with Part C in preventing any offset for additional disability benefits unless the additional disability benefit was made due to pneumoconiosis. *See* H.R.Rep. No. 151, 95th Cong., *reprinted in* 1978 U.S.Code Cong. & Admin.News 237, 246 ("This provision merely brings part B of the program into accord with the treatment afforded offsetting State benefits under part C of current law. Only State benefits received due to pneumoconiosis, and not those received due to an unrelated condition, may act to reduce Federal benefits payments in this respect."); *see also id.* at 275 ("[R]eductions in the amount of benefit payments received by the miner [because of state law] may be made only if the payments to the miner ... are made ... due to pneumoconiosis. In existing law, the reductions are made whether or not the disability of a miner is due to pneumoconiosis."); Conf.Rep. No. 1048, 92d Cong., *reprinted in* 1972 U.S.Code

Cong. & Admin.News 2338, 2339 ("The House bill required the elimination of the practice of offsetting social security disability insurance benefits of certain miners where the claimant also receives black lung benefits. The Senate amendments limited such offsetting to 100 percent of former earnings. The Senate recedes.").

**3.** The Act was criticized in the supplemental views included in the House Report because in many cases the federal black lung benefit would exceed state benefits for total disability.

"Even within the coal mining industry itself, the bill is discriminatory as between miners who were disabled by coal-dust pneumoconiosis and those whose disability resulted from any other cause, when it comes to receiving compensation. A coal miner who is totally disabled by loss of limbs, serious head injury, or even a respiratory disease not caused by coal dust, such as silicosis, will in a number of States receive less than one who is totally disabled by coal-dust pneumoconiosis, and receives a larger benefit because of the Federal participation provided by this bill." H.R.Rep. No. 563, 91st Cong., *reprinted in* 1969 U.S.Code Cong. & Admin.News 2503, 2576.

### III.

 We also reject Twin Pines assertion that this case was wrongfully adjudicated because the ALJ applied the interim regulations contained in 20 C.F.R. § 727 rather than the final regulations which appear in § 718. The Black Lung Benefits Reform Act of 1977, which became operative on March 1, 1978, amended a section of Part A of the black lung statute which authorized the Secretary of Labor to establish standards and develop criteria for determining total disability due to pneumoconiosis with respect to a claim filed under Part C of the statute. The amendment also recognized that Part C claims would be filed on or before the date that the Secretary could promulgate such criteria, and specified that the interim criteria which the Secretary would use to evaluate such claims could not be more restrictive than the standards which had been previously used in establishing the existence of pneumoconiosis for claims against the government.

A preexisting section of Part C, however, indicated that "[f]inal regulations required for implementation of any amendments to this part shall be promulgated and published in the Federal Register ... in no event later than the end of the sixth month following the month in which amendments are enacted." 30 U.S.C. § 931(c). The effective date of the 1977 amendments was March 1, 1978, therefore Twin Pines argues that all claims filed after September of 1978 must be adjudicated according to the final regulations contained in part 718, even though the final regulations did not become effective until March 31, 1980. In this instance, White filed his claim in October 1979.

Initially, we note that the language of § 931(c) does not require that the final regulations become effective six months after the passage of amendments to part C, it merely requires that final regulations be promulgated and published within .six months after the amendment's passage.[4]

In addition, the statute does not indicate that the Secretary loses his authority to act if he fails to meet this procedural time requirement. Although the Supreme Court has never expressly adopted the rule recognized in a number of circuits that "[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision," *St. Regis Mohawk Tribe, New York v. Brock*, 769 F.2d 37, 41 (2d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986) (quoting *Fort Worth Nat'l Corp. v. Federal Savings & Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir.1972) (emphasis added)), it has indicated that "[w]e would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially where important public rights are at stake." *Brock v. Pierce County*, 476 U.S. 253, 259–60, 106 S.Ct. 1834, 1838–39, 90 L.Ed.2d 248 (1986). Given the "extreme importance" of these interim regulations to the efficient administration of the Federal Black Lung Program "because they apply to about 10,000 pending claims," *Mullins Coal Co. v. Director, OWCP*, —— U.S. ——, 108 S.Ct. 427, 429–30, 98 L.Ed.2d 450 (1987), we express a similar reluctance here to declare these regulations invalid after September of 1978 especially when the final regulations which Twin Pines would have us apply were not in place until a year and a half later. At any rate, contrary to the allegations of Twin Pines, the legislative history reveals no intent to divest the Secretary of jurisdiction if he failed to promulgate amendments in a timely fashion; it merely appears to express the intent that the Secretary conduct his duties with dispatch.

Finally, as the Sixth Circuit noted in *Younghiogheny and Ohio Coal Co. v. Warren*, 841 F.2d 134, 136 (6th Cir.1987), the amended sections which give the Secretary authority to establish guidelines for Part C claims appear in Part A of the

---

4. Although the Department of Labor argues that it met this requirement, it provides no basis for us to conclude that it has in fact done so.

Nonetheless, we need not decide the merits of this contention to dispose of this issue.

statute, not Part C. Therefore because § 931(c) only applies to amendments to Part C, it is not applicable to the section in Part A giving the Secretary authority to promulgate criteria for determining total disability under Part C.

As a result, we reject the suggestion that the ALJ erred by applying the interim criteria to determine whether White was totally disabled due to pneumoconiosis.

### IV.

■ Twin Pines also argues that the subsequent medical validation of White's cooperation and effort made by Drs. Kennedy and Mitchell after they reviewed the test tracings cannot serve to fulfill the requirement of 20 C.F.R. § 410.430 that ventilatory studies contain "[a] statement ... as to the individual's ability to understand the directions, and cooperate in performing the tests." Nonetheless, we see no reason to reject the position of the Benefits Review Board to the contrary. *See Inman v. Peabody Coal Co.,* 6 BLR 1–1249, 1–1253 (1984) ("The employer's ... contention that the physician's failure to note the miner's 'understanding' on either test invalidates these tests is without merit. A Department of Labor medical consultant validated the 1978 pulmonary function study and thereby verified the claimant's understanding and cooperation."). *See also Zeigler Coal Co. v. Sieberg,* 839 F.2d 1280, 1283 (7th Cir.1988) (Neither the passage of time, nor an interpretation by a different physician renders the interpretation of a pulmonary function test as to patient's cooperation unreliable.); *Carroll v. Califano,* 619 F.2d, 1157, 1161 (6th Cir.1980) ("Claimant then secured a letter from the physician who had conducted the 1974 pulmonary function studies validating the procedure and results of the studies, thus fulfilling

the requirements of 20 C.F.R. § 410.430.").[5] Accordingly, we concur in the Benefits Review Board's determination that the Salerno ventilatory test conformed with the standards required in the regulations.

### V.

Finally Twin Pines argues that the Salerno ventilatory study is not a sufficient basis on which to base invocation of the interim presumption because Dr. Salerno, in his diagnosis, determined that White's "restrictive ventilatory abnormalities [were] probably secondary to [his] previous traumatic injury to chest and back." Section 727.-203(a)(2) requires that the ventilatory study establish the presence of a "chronic respiratory or pulmonary disease as demonstrated by" qualifying test values. Twin Pines argues that in the present case, however, because of Dr. Salerno's diagnosis, the study cannot invoke the presumption despite the qualifying numbers because the study does not establish the presence of a pulmonary or a respiratory disease.

■ We acknowledge hesitancy in allowing an interim presumption to be invoked based on a pulmonary function test, which, in the opinion of the certified pulmonary specialist administering the test, only qualified due to a cause other than a pulmonary or respiratory disease. In *Mullins Coal Co. v. Director, OWCP,* — U.S. —, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), the Supreme Court held that a single item of qualifying evidence is not always sufficient to invoke an interim presumption based upon it. Instead, the regulations require that the claimant establish one of the qualifying facts by a preponderance of the evidence.

---

5. Although Twin Pines acknowledges that it is not "essential to finding error," it also asserts that the proper evidentiary requirements for ventilatory studies in this case are established in 20 C.F.R. § 718.103 which in addition to requiring the statement required by § 410.430 also requires that the statement be signed by the physician or the technician conducting the test. We do not address that argument here since it is raised for the first time on appeal. And although apparently the Benefits Review Board has rejected similar arguments, even if we were inclined to decide the question, § 718.103 only requires substantial compliance with its terms. Because the ventilatory study which is at issue here—the Salerno study—was completed well before this signature requirement was promulgated, we would find "substantial compliance" in these circumstances.

**1218**

"Thus it seems perfectly clear that it is not the X-ray in isolation that 'establishes' the presence of the disease; rather, *the regulation must, at a minimum, have reference both to the X-ray itself and to other evidence that sheds light on the meaning and significance of the X-ray.*

. . . . .

". . . [I]f a miner is not actually suffering from the type of ailment with which Congress was concerned, there is no justification for presuming that that miner is entitled to benefits. . . . By requiring miners to show that they suffer from the sort of medical impairment that initially gave rise to congressional concern, and then by requiring employers to shoulder the remainder of the proof burden, the Secretary's reading of the interim presumption's invocation burden satisfies both the purposes of the statute and the need for a logical connection between the proven fact and the presumed conclusion."

*Id.* 108 S.Ct. at 434, 439–40 (footnotes omitted) (emphasis added).[6]

According to *Mullins* then, the ALJ was obligated to consider Dr. Salerno's opinion before determining whether invocation of the interim regulation based on the qualifying ventilatory study was proper. Because we conclude that the ALJ failed to do so in

an acceptable manner, we remand this case to the Benefits Review Board.

In her decision awarding benefits, the ALJ accorded considerable weight to Dr. Salerno's opinion that the lung impairment was *restrictive* in order to call into question Dr. Repsher's testimony that the impairment was principally *obstructive* and thus not likely caused by pneumoconiosis. However, without any further discussion or evidence, the ALJ states that she does not view the balance of Dr. Salerno's statement "as negating the presence of pneumoconiosis in this claimant." R.Vol. I at 69. It is unclear to us how the ALJ arrived at that conclusion. Dr. Salerno's statement *is*, after all, his diagnosis of White's respiratory problem and, as such, does indicate that Dr. Salerno does not believe that White's respiratory problems are due to pneumoconiosis. Further, Dr. Salerno's report clearly indicates that White's ventilatory difficulties are "not related to dust exposure in [his] coal mine employment." Although the ALJ is allowed to weigh medical evidence which is in dispute, "[s]he cannot substitute her expertise for that of a qualified physician, and [s]he cannot simply disregard the medical conclusions of a qualified physician." *Dotson v. Peabody Coal Co.*, 846 F.2d 1134, 1137 (7th Cir.1988) (citing *Wetherill v. Director, OWCP*, 812 F.2d 376, 382 (7th Cir.1987)).[7]

6. Before the Supreme Court issued the *Mullins* opinion but shortly after the Benefits Review Board affirmed the ALJ's award of benefits in this case, the Board clarified its position regarding the invocation of the presumption based on ventilatory studies. This clarification, based on the same concern as *Mullins*, would likely have dictated a different result in this case. In *Casella v. Kaiser Steel Corp.*, 9 BLR 1–131, 1–134 (1986), the Board noted:

"Previously, the Board has addressed issues regarding the reliability of ventilatory tests in terms of a miner's cooperation, comprehension, and effort in submitting to the tests, as well as in terms of the quality of the technical administration of such tests. See 20 C.F.R. § 725.456(c); *Mahan v. Kerr–McGee Coal Corp.*, 7 BLR 1–159 (1984); *Lese v. Bethleehem Mines Corp.*, 7 BLR 1–149 (1984); *Bolyard v. Peabody Coal Co.*, 6 BLR 1–767 (1984). In these instances, the Board has permitted the administrative law judge to consider the reliability of qualifying and conforming pulmonary function studies.

The question of an objective test's reliability and probative value, however, extends beyond the consideration of mere technical factors. The extent to which a claimant's own pathogenic condition may render a pulmonary function study unreliable (as an indicator of the miner's chronic respiratory or pulmonary disease) is also a proper line of inquiry for the administrative law judge. The Board has held that where the record contains competent medical testimony that a miner's qualifying objective test scores may have been affected by a health condition not related to (and therefore not indicative of) the type of disease or impairment which the objective tests were designed to detect, such evidence must be discussed *prior to invocation of the interim presumption.* (Emphasis added).

7. As opposed to his report in *Micheli v. Director, OWCP*, 846 F.2d 632 (10th Cir.1988), which was used for purposes of rebuttal, in this report, Dr. Salerno did account for the qualifying ventilatory study by concluding that it was due to a

According to *Mullins*, Dr. Salerno's statement prevents the interim presumption from attaching in this case unless, based on other medically competent testimony or Dr. Salerno's lack of credibility, the ALJ could refute Dr. Salerno's opinion with substantial evidence and thus invoke the presumption based on the qualifying test.[8]

What the ALJ has done here is to accept that part of Salerno's diagnosis which suggests that the difficulty is restrictive, while attempting to reconcile the rest of it for purposes of invocation by determining that it is not inconsistent with a finding of pneumoconiosis. Because this opinion is not supported by substantial evidence we are required to remand to the Benefits Review Board for reconsideration.

## VI.

We realize that the ALJ not only invoked the presumption based on the Salerno ventilatory test, but also on the "reasoned medical judgment" of Dr. Buglewicz pursuant to § 727.203(a)(4). However, the Benefits Review Board did not review the benefits award on that basis and, in light of *Mullins*, it appears to us that the ALJ employed an improper legal standard in invoking the interim presumption based on Buglewicz's medical opinion alone, and hence we would nonetheless be obliged to remand. As a further matter, we are not sure, under the circumstances presented here, that Dr. Buglewicz's diagnosis constituted "reasoned medical judgment." Therefore, we decline to affirm this award based on § 727.203(a)(4) without first having the benefit of the Board's wisdom on review.

On remand, the Board may affirm the award of benefits on § 727.203(a)(4) grounds, if it can do so on a reasoned basis. As an alternative, the Board can remand to the ALJ either or both of the issues on which she based the invocation of the interim presumption. Insofar as the presumption was based on the ventilatory study completed for Dr. Salerno, however, the ALJ cannot invoke the presumption until she has adequately considered the diagnosis of Dr. Salerno. Thus, although the ALJ may, based on appropriate medical evidence, accept the qualifying study while rejecting the opinion of Dr. Salerno as to its cause, she must do so based on substantial evidence. Her conclusion in this case that Dr. Salerno's diagnosis was not inconsistent with a finding of pneumoconiosis does not provide such a basis. Accordingly, the decision of the Benefits Review Board affirming the award of benefits to Charles L. White is REVERSED, and the matter is REMANDED to the Benefits Review Board.

restriction caused by White's previous back and chest injuries. Thus, in this case, the ALJ was not free to ignore the conclusions of Dr. Salerno. *See Id.* at 635–36.

**8.** Although earlier in her decision the ALJ does recognize in a different context Dr. Buglewicz's opinion that it was highly doubtful that there was any correlation between White's pulmonary function tests and his 1970 accident, she nonetheless does not reject Dr. Salerno's opinion because of it, apparently due to her conclusion that Dr. Salerno's statements were not inconsistent with pneumoconiosis and her use of his diagnosis in calling in question Dr. Repsher's conclusions. We note at any rate that given Dr. Salerno's diagnosis, it would not be acceptable to permit the ALJ to accept part of it and reject the other because his conclusion that White's lung impairment was restrictive was in all probability connected to his determination that the impairment was due to the previous injuries to White's chest and back. The Administrative Procedures Act, which requires us to review evidence on the record as a whole, does not allow us to permit that kind of selective analysis. *See* 5 U.S.C. § 706; *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *see also Peabody Coal Co. v. Lowis,* 708 F.2d 266, 276 (7th Cir.1983) ("Likewise the ALJ in this case performed a selective analysis of the rebuttal testimony, taking out of context Dr. Dew's references to the X-ray films in order to reach the desired result."); *Peabody Coal Co. v. Director, OWCP,* 581 F.2d 121, 123 (7th Cir.1978) (hearing officer's efforts to "marshall 'medical' evidence in support of his finding of a total pulmonary disability by picking and choosing bits and pieces from Dr. Davis's report bordered on the ridiculous.")