**BIG HORN COAL COMPANY, Petitioner,**

v.

**OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent,**

**Homer F. Alley, Claimant–Respondent.**

**No. 88–2104.**

United States Court of Appeals, Tenth Circuit.

March 7, 1990.

---

3. John Deere also argues that the bankruptcy court should have considered another sham contract as evidence of defendant's fraud. The bankruptcy court refused to consider this contract as evidence of fraud, because defendant's son forged defendant's signature on the contract "without knowledge, agency or authority by his father." I R. 17. John Deere argues in the alternative either that defendant's conduct represented fraud by nondisclosure or that defendant's son had authority to sign the contract on his behalf. The bankruptcy court was of the opinion that the evidence did not support either of these theories, and we cannot conclude that these findings are clearly erroneous.

John S. Lopatto III, Washington, D.C., for petitioner.

Richard A. Seid, Counsel for Administrative Litigation and Legal Advice, (Robert P. Davis, Solicitor of Labor, Donald S. Shire, Associate Sol., and Barbara J. Johnson, Counsel for Appellate Litigation, with him on the brief), U.S. Dept. of Labor, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs.

Edward J. Scheunemann, Denver, Colo., filed a brief for claimant-respondent Homer F. Alley.

Before McKAY and LOGAN, Circuit Judges, and BOHANON, District Judge.*

LOGAN, Circuit Judge.

In January 1976, claimant-respondent Homer F. Alley retired from his employment with the petitioner Big Horn Coal Company. At the time, he had worked for the company for thirty years, spending most of that time as a heavy equipment operator in a strip mine operation. The last year of his employment, Alley "bid down" (requested lower paying and less taxing work) to a position as an oiler. Since his retirement from active coal mining, Alley has been employed as an international representative for the United Mine Workers Union District 15. This is a paid position, at which Alley earns a salary at least equal to his previous compensation as an equipment operator.

In March 1976, Alley filed a claim for federal black lung benefits pursuant to 30 U.S.C. ch. 22, subch. IV, and 20 C.F.R. pt. 727, subpt. C. After hearing, the administrative law judge (ALJ) found that Alley was totally disabled from pneumoconiosis ("black lung") caused by his work in Big Horn's coal operation. In reaching his decision, the ALJ considered various x-rays, pulmonary function tests, and arterial blood-gas tests performed on Alley by sev-

* The Honorable Luther L. Bohanon, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

eral physicians.[1] The ALJ invoked the interim presumption of disability under 20 C.F.R. § 727.203 based on the pulmonary function and blood-gas studies.[2] He then found that Big Horn had failed to rebut the presumption and awarded benefits to Alley.

Big Horn appealed, contending that the ALJ's opinion was overly vague and did not adequately resolve the issues raised by Big Horn. The Benefits Review Board agreed with Big Horn and remanded the case to the ALJ for more detailed findings. The Board, however, specifically affirmed the ALJ's invocation of the interim presumption based on the blood-gas studies. On remand the ALJ issued a more detailed opinion, again finding for Alley, and this time the decision was affirmed on appeal. Big Horn thereafter filed for review of the Board's decision in this court.

On appeal, Big Horn contends that the ALJ erred in four respects: (1) in considering Dr. Batty's test results without requiring that the tests meet quality criteria specified under 20 C.F.R. § 718.105; (2) in not considering the report and testimony of Dr. Hiller before invoking the interim presumption of disability under 20 C.F.R. § 727.203(a)(3); (3) in not taking into account factors other than pulmonary disability (to wit: age, obesity, and altitude) in evaluating the test results; and (4) in awarding damages despite Alley's continuing gainful and comparable employment as a Union employee.

Upon review of the record, we believe that, although the ALJ did not consider the evidence in the most desirable order, the decision of the ALJ is supported by substantial evidence and any error was harmless. We therefore affirm the Board's decision awarding benefits to Alley.

I

Big Horn asserts that the ALJ's reliance on Dr. Batty's test results to invoke the interim presumption was erroneous because the tests did not conform to the quality criteria established in 20 C.F.R. § 718.105. We decline to consider the argument because Big Horn failed to preserve it below. Part 718 of the regulations has been in effect since April 1980; therefore, since this claim was filed, Big Horn has had at least three opportunities to raise this issue: on its original appeal to the Board, on remand to the ALJ, and on its second appeal to the Board. Given that the issue is raised for the first time in this court, we see no reason to address it. *See Twin Pines Coal Co. v. United States Dep't of Labor*, 854 F.2d 1212, 1217 n. 5 (10th Cir.1988).

II

■ Big Horn further contends that, regardless of whether Dr. Batty's reports satisfied the quality criteria, the ALJ should only have considered them in conjunction with Dr. Hiller's reports and testimony *before* invoking the presumption of disability. Instead, the ALJ considered Dr. Hiller's test reports at the invocation stage, and considered Dr. Hiller's testimony that Alley did not suffer from black lung only in rebuttal. Dr. Hiller testified that the blood-gas abnormalities reflected in Alley's tests were caused by a combination of age, altitude, obesity, and possibly cigarette smoking. Big Horn argues that this testimony must, as a matter of law, be considered before a presumption of disability can be invoked.

We agree that the Supreme Court's recent decision in *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), reflects a preference for considering all like evidence at the invocation stage, rather than considering evi-

---

1. Arterial blood-gas studies were performed on Alley by two different physicians on two different occasions. On March 24, 1979, Dr. James Batty recorded at-rest test results of PCO2: 31 mm/HG and PO2: 49 mm/HG. On July 5, 1979, Dr. Michael Hiller performed an at-rest test resulting in PCO2: 39 mm/HG and PO2: 55 mm/HG. He then performed an exercise test and recorded results of PCO2: 37 mm/HG and

PO2: 63 mm/HG. All of the tests were performed in Sheridan, Wyoming (approximate elevation 4100 feet).

2. Reliance on the pulmonary function study was later rejected because the ALJ failed to consider only the highest test result.

dence favorable to the claimant at the invocation stage and evidence favorable to the employer in rebuttal. However, the Supreme Court's holding does not extend so far as to require, as a matter of law, that all like evidence be so considered. In fact, the *Mullins* decision only states that it is not error for an ALJ to consider all like evidence at the invocation stage. *See id.* at 139–40, 108 S.Ct. at 429–30 ("the only dispute is over how much of the relevant evidence *may* be considered in determining whether the interim presumption shall be invoked" (emphasis added)); *id.* at 149, 108 S.Ct. at 435 ("there would seem to be no reason why [the ALJ] *must* ignore all X rays in a series except one" (emphasis added)). While *Mullins* has been read to require that the factual predicate for the interim presumption of disability must be established by a "preponderance of the evidence," *see, e.g., id.* at 161, 108 S.Ct. at 441 (Marshall, J., dissenting); *Twin Pines,* 854 F.2d at 1217, the Court in *Mullins* specifically rejected a mechanistic view that would require all evidence of any one type to be considered at any particular point in the hearing. The Court stated, "[a]s long as relevant evidence will be considered at some point by the ALJ, the demand that the decision be made on the complete record is satisfied." *Mullins,* 484 U.S. at 150, 108 S.Ct. at 435.

Ordinarily, the requirement that a decision be made on a preponderance of the evidence would require that the ALJ consider and compare all like evidence at the same time. In the instant case, however, we find no error in the ALJ's failure to make such a comparison before invoking the presumption, because he subsequently rejected all of Dr. Hiller's testimony, stating that it was inconsistent and lacked credibility. ALJ's Decision and Order on Remand at 4–6. Thus, the ALJ's delay in considering the doctor's testimony can at most amount to harmless error.

Our approach to this issue is fully consistent with this circuit's decision in *Twin Pines.* In that case, we reversed the ALJ's invocation of the interim presumption be-

cause of the ALJ's failure to consider the entirety of a doctor's report, when the ALJ relied on one portion of that report to establish the claimant's disability. In *Twin Pines* we ruled that an ALJ may not "cherry pick" within one doctor's report, accepting the portions he or she finds amenable and rejecting contradictory evidence or analysis. We noted, however, that the presumption of disability could be invoked, even in the face of unfavorable evidence, if the favorable evidence outweighed the unfavorable or the unfavorable evidence lacked credibility. *Id.* at 1219. In this case, the ALJ specifically found that the unfavorable evidence lacks credibility.

### III

 Big Horn asserts that the ALJ erred in his failure to consider possible nondisease causes for the claimant's abnormal blood-gas test results. We note that the ALJ did consider the altitude of the test sites and Alley's far distant history of cigarette smoking[3] in evaluating the test results. The ALJ also apparently rejected as unpersuasive Dr. Hiller's testimony that Alley's age and weight would intensify the natural effect of altitude. We see no reason to overturn these decisions of the ALJ.

While Big Horn is correct in its argument that the altitude-adjusted tables from 20 C.F.R. pt. 718 app. C should not be incorporated, as a matter of law, into Part 727, its argument with regard to the needed altitude adjustment is incoherent and self-serving. Big Horn appears to argue that altitude must be considered in the determination of disability, while alleging that no guidelines exist by which an ALJ or reviewing court may evaluate the extent to which altitude may have affected test results. We agree that altitude may skew results to some extent, and that therefore, altitude is a proper consideration of the ALJ, but we reject the notion that we may not use the Appendix C tables for comparative purposes. These tables reflect the Department of Labor's best estimate of the extent to which altitude may affect blood-gas tests in the black lung context. While

---

**3.** Claimant quit smoking approximately twenty- five years before he filed for benefits.

we are not bound by them in our decision making, we look to them for guidance.

Big Horn seeks to have its cake and eat it too, knowing that the only other evidence presented with regard to altitude adjustment is the testimony of Dr. Hiller. We see no reason why the ALJ should accept Dr. Hiller's unsupported assertion that altitude caused a "false positive" in this case, over the contrary result that is reached by comparing the test results with the altitude-adjusted Appendix C tables. When we use the standards incorporated in the Appendix C tables, Alley's two at-rest test results still reflect pulmonary disability sufficient to invoke the interim presumption of disability. These tests represent substantial evidence justifying the presumption.

With regard to the other factors cited by Big Horn as potentially causing the pulmonary disability, we will not disturb the ALJ's findings. The ALJ rejected Dr. Hiller's testimony as too inconsistent for credibility and relied on Dr. Batty's opinion that Alley's disability was the result of coal dust exposure and nothing else. The ALJ was in a better position to evaluate the relative credibility of witnesses than is this reviewing court, and we will not, absent clear error, reverse his judgments.[4]

## IV

■ Big Horn argues that Alley is not disabled because it proved that he is currently engaged in "comparable and gainful work" under 20 C.F.R. § 727.203(b)(1). Big Horn cites Alley's continued work with the United Mine Workers Union as employment similar, and related to, his coal mining work. Further, Big Horn alleges that Alley's salary, which apparently equals or exceeds the current rate for heavy equipment operators at its mine, precludes a finding of disability.

Several circuits have struggled to give content to the words "comparable and gainful" as they are used in this regulation.

The Third Circuit, in *Echo v. Director, OWCP*, 744 F.2d 327, 331 (3d Cir.1984), focused on compensation as the touchstone for comparable work. On the other hand, the Sixth Circuit, in *Ratliff v. Benefits Review Board*, 816 F.2d 1121, 1125 (6th Cir.1987), relied on a comparison of skills and effort to determine if a miner's second career was comparable to his first. This is an issue of first impression in this circuit.

We think that the Sixth Circuit advances a most persuasive set of arguments that the regulations require that work must be comparable in the sense of utilizing similar skills, education, and exertion. We, therefore, adopt that circuit's reading of the regulations. The statutes and regulations applicable to black lung benefits do not impose an earning cap for eligibility for benefits. There is no sliding scale by which disability benefits are reduced commensurate with other earnings. From this, we conclude that the injury Congress meant to remedy through these benefits was miners' reduced ability to perform their previous (or similar) work, not miners' general reduced ability to earn a living. *See Ratliff*, 816 F.2d at 1124.

This approach renders the fact that Alley earns *more* as a Union representative than he did at Big Horn largely irrelevant to our decision. If he earned less, we would be more concerned since reduced earnings should serve as evidence of reduced capacity. *See Echo*, 744 F.2d at 331–32 & n. 6. But Alley's good fortune in becoming a Union representative does not indicate that he is capable of performing the type of manual labor he performed before, any more than discovering he had great painting talent would reflect on his ability to work in a strip mine. Big Horn cannot seriously argue that if Alley became "Grandpa Moses" and earned a living painting from a wheelchair (or hospital bed) that this would preclude his eligibility for black lung benefits. Because we cannot find error in the ALJ's conclusion that Al-

---

**4.** We are also aware of the fact that, while factors such as age and weight may affect blood-gas test results, the regulations give this court no guidance in how to determine the extent to which the results should be discounted. In such circumstances, we cannot find error in the ALJ's decision to rely on relative credibility of the witnesses.

ley's two jobs utilize substantially different skills, education, and types of exertion, we affirm his finding that the two jobs are not comparable under the regulations.

Big Horn's argument that the jobs are comparable because Alley developed his Union contacts and skills while under its employment are so unpersuasive as to border on frivolous. A union leader may develop his skills and contacts in spite of his employer; certainly the development of such skills is not generally considered part of the employee's job description. Big Horn has presented nothing to contradict this notion.

AFFIRMED.