Mike MANGUS, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; and Price River Coal Co., Respondents.

No. 87-2574.

United States Court of Appeals, Tenth Circuit.

Aug. 17, 1989.

Jonathan Wilderman (Thomas A. Feldman, with him on the brief), Denver, Colo., for petitioner.

Michael J. Rutledge, Asst. Counsel for Benefit Programs (George Salem, Sol. of Labor, Donald S. Shire, Associate Sol., Barbara J. Johnson, Counsel for Appellate Litigation, Sylvia T. Kaser, Asst. Counsel for Appellate Litigation, U.S. Dept. of Labor, with him on the brief), Washington, D.C., for respondent, U.S. Dept. of Labor.

James M. Elegante of Parsons, Behle & Latimer, Salt Lake City, Utah, for respondent, Price River Coal Co.

Before McKAY and BARRETT, Circuit Judges, and JENKINS, Chief Judge.*

PER CURIAM.

Petitioner Mike Mangus (claimant) appeals the decision of the Benefits Review Board of the Department of Labor (review board) reversing an earlier decision by an Administrative Law Judge (A.L.J.) which awarded Mangus benefits pursuant to Subchapter IV of the Federal Coal Mine Health and Safety Act of 1969 as amended, 30 U.S.C. §§ 901–45 (1982 & Supp. III 1985) (the Act).[1] Our review of this matter is twofold—to set forth the standard of causation by which to examine the nexus between pneumoconiosis and total disability, and to apply that standard to determine whether the A.L.J. correctly decided that claimant's total disability is sufficiently related to pneumoconiosis to entitle claimant to benefits under the Act.[2]

Claimant worked underground as a coal miner for all of his adult life with the exception of an eight-year period during which he worked in a uranium mine. He smoked a pack of cigarettes per day for thirty-five years, including the years during which he worked in the uranium mine. In 1982, when he was sixty-four years old, he was diagnosed as having a cancerous mass in his left lung. His physician prepared to perform a lobectomy to remove the cancerous portion of the lung. Complications during surgery, however, necessitated removal of the entire lung. Coal dust deposits in the hilar lymph nodes surrounding the pulmonary artery had caused tough scar tissue to form, a condition diagnosed in the pathology report as anthracosilicosis, and this scar tissue caused the artery to tear during surgery. Due to the attached tough, inflexible scar tissue, the surgeon was unable to clamp the artery and was forced to remove the entire lung. Biopsy examination of the tissues from the removed lung, confirmed by subsequent review of the slides, revealed that claimant suffered from a single isolated cancerous mass but that he did not suffer from pneumoconiosis in the lung tissue itself. Claimant's lung tissues were diagnosed as having a condition of idiosyncratic fibrosis, fibrosis of nonspecific cause.

---

* Honorable Bruce S. Jenkins, Chief Judge, United States District Court for the District of Utah, sitting by designation.

1. The Act was amended in 1972 (Black Lung Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat. 151); in 1978 (Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95–227, 92 Stat. 11, and Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95); and in 1981 (Black Lung Benefits Review Act of 1981, Pub.L. No. 97–119, 95 Stat. 1635, sometimes referred to as the 1981 Amendments).

2. Price River Coal Company also asks us to consider whether the A.L.J. violated the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A) (1982), by insufficient citation to the evidence in his written opinion. We find sufficient reference to the evidence in the A.L.J.'s opinion to satisfy the requirements of the Administrative Procedure Act.

## I.

To create entitlement under the Act for claims filed after January 1, 1982, the miner must prove: (1) that he suffers from pneumoconiosis, (2) that his pneumoconiosis arose from his coal mine employment, and (3) that he is totally disabled due to the pneumoconiosis. 20 C.F.R. §§ 718.201–204 (1988). *Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1318, 1320 (3d Cir.1987); *see also Strike v. Director, Office of Workers' Compensation Programs*, 817 F.2d 395, 399 (7th Cir.1987); *Perry v. Director, Office of Workers' Compensation Programs*, 9 Black Lung Rep. (MB) 1–1, 1–2 (1986).

The interim regulations of the Black Lung Benefits Reform Act of 1977 apply to claims filed before April 1, 1980, and are codified at 20 C.F.R. § 727.200–206. Under these interim regulations, each circuit, including this one, which considered the issue, interpreted 20 C.F.R. § 727.203(b)(3) [3] as providing that the employer bears the burden of rebutting a properly raised presumption of causation between a claimant's total disability and his pneumoconiosis. The employer must rule out *any* relationship between the disability and the coal mine employment.[4]

**3.** 20 C.F.R. § 727.203 provides:

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if one of the following medical requirements is met:

....

(b) *Rebuttal of interim presumption....* The presumption in paragraph (a) of this section shall be rebutted if:

....

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment.

**4.** *See, e.g., Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 n. 5 (7th Cir.1988); *Logsdon v. Director, Office of Workers' Compensation Programs*, 853 F.2d 613, 616 (8th Cir.1988); *Consolidation Coal Co. v. Smith*, 837 F.2d 321, 323 (8th Cir.1988); *Warman v. Pittsburg & Midway Coal Mining Co.*, 839 F.2d 257, 259 (6th Cir.1988); *Wetherill v. Director, Office of Workers' Compensation Programs*, 812 F.2d 376, 380 (7th Cir.1987); *Rosebud Coal Sales Co. v. Weigand*, 831 F.2d 926, 928 (10th Cir.1987); *Black Diamond Coal Mining Co.*

Claims filed after April 1, 1980, fall under the so-called permanent regulations promulgated by the Secretary of Labor and codified at 20 C.F.R. § 718.201–206. Section 718.204(a) [5] corresponds to 20 C.F.R. § 727.203(b)(3), in that both deal with the causal relationship between a miner's pneumoconiosis and his total disability. However, they differ in that § 727.203(b)(3) allows a presumption of causation for a properly raised claim which must be rebutted by the employer. Section 718.204(a) raises no presumption but rather gives the claimant the burden of proving causation. The parties in the case before us correctly stipulated that this case falls under § 718.204(a), having been filed July 8, 1982. Tr. at 8.

## II.

The parties made five stipulations at the hearing before the A.L.J.: (1) if the claimant were to be found eligible, Price River Coal Company (operator) is the "responsible operator" for the purposes of 20 C.F.R. § 725.101(a)(28), as applied by 20 C.F.R. § 718.4; (2) claimant labored in coal mine employment for more than fifteen years; (3) claimant suffers from pneumoconiosis;[6] (4) claimant is totally disabled;

*v. Benefits Review Bd.*, 758 F.2d 1532, 1534 (11th Cir.1985); *Carozza v. United States Steel Corp.*, 727 F.2d 74, 78 (3d Cir.1984); *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123–24 (4th Cir. 1984); *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1120 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *Alabama By–Products Corp. v. Killingsworth*, 733 F.2d 1511, 1516 n. 10 (11th Cir.1984); *Palmer Coking Coal Co. v. Director, Office of Workers' Compensation Programs*, 720 F.2d 1054, 1058 (9th Cir.1983).

**5.** 20 C.F.R. § 718.204(a) provides:

Benefits are provided under the Act for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of death. The standards of this section shall be applied to determine whether a miner is or was "totally disabled" for the purpose of the Act.

**6.** 20 C.F.R. § 718.201 provides that:

For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, *including* respiratory and

and (5) claimant's pneumoconiosis resulted from his work in the coal mines. Tr. at 5–10.[7]

■ Therefore, as the parties agree that the claimant is totally disabled and suffers from pneumoconiosis, the only issue the claimant must prove is whether claimant's pneumoconiosis is the cause of his total disability within the meaning of the Act. In making such a determination the court must decide what standard of causation a claimant must prove in order to obtain benefits.

The operator argues that the proper standard is that the pneumoconiosis is "a substantially contributing factor."[8] It argues that Mangus does not meet this standard and therefore should not be awarded benefits. The Director of the Office of Workers' Compensation Programs of the United States Department of Labor (director), however, argues that the proper standard is that a claimant must establish that the miner's disability is "significantly related to" or "substantially aggravated by" the miner's pneumoconiosis,[9] and contends that Mangus has met this standard and is entitled to benefits. Claimant states that the standard should be a showing that the pneumoconiosis was a "sufficient cause" of disability. He argues that since he would have had a lobectomy instead of a pneumonectomy but for the anthracosilicosis of his hilar lymph nodes, and that those who examined him and reviewed his case attribute his total disability to his pneumo-

nectomy, that he has met the standard and is entitled to benefits under the Act.

The question of what standard of causation is required between a claimant's pneumoconiosis and his or her total disability is a question of law, *Carozza*, 727 F.2d at 76–78, which we review *de novo.* *North Am. Coal Corp. v. Director, Office of Workers' Compensation Programs*, 854 F.2d 386, 388 (10th Cir.1988). In determining the appropriate standard, we look first to Congressional intent.

In large part, Congress enacted the Black Lung Benefits Act in response to problems encountered by miners when they sought compensation under state workers' compensation programs for their occupational disease. One of the major obstacles to qualifying occupational disease [sic] under state workers' compensation programs is an inflexible, often impenetrable, proof of causation requirement.

*Southard v. Director, Office of Workers' Compensation Programs*, 732 F.2d 66, 70–71 (6th Cir.1984) (citations omitted). See generally Note, *Compensating Victims of Occupational Disease*, 93 Harv.L.Rev. 916, 922 (1980). "The Act is intended to be remedial in nature, and doubts should be resolved in favor of the disabled miner or his survivors." *Stomps v. Director, Office of Workers' Compensation Programs*, 816 F.2d 1533, 1534–35 (11th Cir.1987) (citing Pub.L. No. 92–303, 1972 U.S.Code Cong. & Admin.News 2305, 2315; Pub.L. No. 95–239, 1978 U.S.Code Cong. & Admin.News 237, 240); *see also Southard*, 732 F.2d at

*pulmonary impairments, arising out of coal mine employment.* This definition includes, but is not limited to, coal workers' pneumoconiosis, *anthracosilicosis*, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or *pulmonary impairment significantly related to, or substantially aggravated by,* dust exposure in coal mine employment.
(Emphasis added).

7. References in this opinion to the record are references to the certified case record from the

benefits review board, with documents numbered in the order they appear in the review board's clerk's index. "Tr." refers to the transcript of the evidentiary hearing held before the A.L.J.

8. The operator's standard is drawn from the language of 20 C.F.R. § 718.205(c), the subsection concerning criteria for determining whether a miner's death, in contrast to incapacity, was due to pneumoconiosis.

9. The director draws this standard from the definition of pneumoconiosis found at 20 C.F.R. § 718.201. *See* n. 6.

71.[10] "[T]he broad remedial purposes of the Black Lung Act cannot be achieved if claimants are held to a standard of proof approaching medical certitude. The reality of coal mine employment is such that many physical and environmental factors may converge to produce a totally disabling respiratory or pulmonary impairment." *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 124 (4th Cir.1984) (citations omitted).

Apparently, no circuit has yet addressed the specific issue of defining the requisite causal nexus between pneumoconiosis and total disability under 20 C.F.R. § 718.204(a). However, two circuits have used language from 20 C.F.R. § 718.203(a) to define the standard for causation between coal mine employment and pneumoconiosis under 20 C.F.R. § 718.203(c), when the miner worked in coal mines for less than ten years. These decisions, while not dispositive, offer guidance. Both § 718.203 and § 718.204(a) concern causal relationships; § 718.203 pertains to the nexus between a miner's work in coal mines and his pneumoconiosis, and § 718.204(a) pertains to the nexus between his pneumoconiosis and his total disability. The Eleventh Circuit and the Sixth Circuit have adopted the rule that a claimant's pneumoconiosis must be shown to have arisen "at least in part" from his coal mine employment, although such employment need not have been the sole factor leading to disability. *Stomps,* 816 F.2d at 1536; *Southard,* 732 F.2d at 71. "[T]he Act suggests that a miner must establish a *contributory* relationship, as opposed to the causal etiology of any discreet exposure period." *Southard,* 732 F.2d at 71. In addition, in *McClendon v. Drummond Coal Co.,* 861 F.2d 1512, 1515 (11th Cir.1988), the Eleventh Circuit applied

the same "at least in part" language from 20 C.F.R. § 718.203(a) to § 718.203(b), in a case in which the miner had worked more than ten years and the operator was attempting to rebut the presumption of causation contained in § 718.203(b).

Under 20 C.F.R. § 718.403, the claimant bears the burden of proving that his total disability is due to pneumoconiosis by a preponderance of the evidence. *Baumgartner v. Director, Office of Workers' Compensation Programs,* 9 Black Lung Rep. (MB) 1–65, 1–66 (1986); *Gee v. W.G. Moore and Sons,* 9 Black Lung Rep. (MB) 1–4, 1–6 (1986). We believe this burden would be inappropriately heavy were we to require that he or she also prove that the causal nexus fit a description which is embodied in such nebulous terms as "significant" or "substantial." These words imply quantification and relative ranking on a continuum of causation. When multiple causative factors converge to create total disability, it would be difficult for the claimant and for the courts to determine the relative quantification of the various causal elements. If Congress had desired to even further increase the burden on the claimant, it could have done so explicitly in 1981, or, by further amendment, in any of the subsequent seven years. It has not chosen to do so, even in the face of repeated liberal interpretation of the Act by the courts, *see, e.g., supra* n. 4.

We conclude that the appropriate standard to use as guidance for interpretation of 20 C.F.R. § 718.204(a) is as follows: if the pneumoconiosis is at least *a contributing cause,* there is a sufficient nexus between the pneumoconiosis and the total disability to satisfy claimant's burden of

---

**10.** For information regarding the development of the Federal Coal Mine Health and Safety Act of 1969 and its subsequent revisions, see generally *Pittston Coal Group v. Sebben,* —— U.S. ——, 109 S.Ct. 414, 417–19, 102 L.Ed.2d 408 (1988); *Strike v. Director, Office of Workers' Compensation Programs,* 817 F.2d 395, 397–99 (7th Cir. 1987); 127 Cong.Rec. 31,506–14 (1981) (House debate); 127 Cong.Rec. 31,958–67 (1981) (Senate debate); Lopatto, *The Federal Black Lung Program: A 1983 Primer,* 85 W.Va.L.Rev. 677 (1983).

There is limited legislative history concerning the 1981 Amendments. Lopatto, *supra,* at 696. As the House and Senate debates cited in the preceding paragraph make clear, however, the 1981 Amendments were designed to bring solvency to the trust fund established by the Act. Solvency was to be achieved by doubling the tax to be paid per ton by the operators while making only modest decreases in benefits by curtailing possible abuses created by some of the presumptions and death benefits in the earlier versions of the Act. *See also* Lopatto, *supra,* at 700–02.

proof. This standard is consistent with congressional intent of liberal assistance to totally disabled coal miners. It is also consistent with nearly twenty years of court interpretation of the Act in eight different circuits during the course of three sets of legislative amendments. There is not clear language in the 1981 Amendments or guidance from their legislative history directing us to require a heightened causal relationship between a claimant's pneumoconiosis and his or her total disability. The creation of a higher standard is for someone other than the courts.

In the case before us, the A.L.J. determined that claimant's pneumoconiosis was "a contributing cause" of claimant's pneumonectomy and thus of his total disability. Doc. 12 at 3. This determination is sufficient to entitle claimant to benefits.

### III.

Having determined the applicable standard of causation, we turn to application of that standard to the case before us. This circuit has held: "On review [of a black lung benefits case], the court of appeals must scrutinize the [review board's] decisions for errors of law and for adherence to the substantial evidence standard governing the Board's review of the administrative law judge's factual determinations." *Director, Office of Workers' Compensation Programs v. Gurule*, 653 F.2d 1368, 1371 (10th Cir.1981).

In *Bueno v. Director, Office of Workers' Compensation Programs*, 7 Black Lung Rep. (MB) 1–337 (1984), the review board stated that:

> In reviewing the administrative law judge's Decision and Order, the Board's role is narrowly circumscribed. If the administrative law judge's findings of fact are supported by substantial evidence, are not irrational, and his rulings are in accordance with law, they are

binding upon this Board and may not be disturbed.

*Bueno* at 1–339 (citing 33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a); *O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965)). *See also Velasquez v. Director, Office of Workers' Compensation Programs*, 835 F.2d 262, 264 (10th Cir.1987); *Kaiser Steel Corp. v. Director, Office of Workers' Compensation Programs*, 748 F.2d 1426, 1429–30 (10th Cir.1984); *American Coal Co. v. Benefits Review Bd.*, 738 F.2d 387, 391 (10th Cir.1984). " '[S]ubstantial evidence' is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Velasquez*, 835 F.2d at 265.

■ Whether anthracosis of the hilar lymph nodes constitutes pneumoconiosis under the Act is a question of fact to be determined by the administrative law judge based on the evidence before him. *Bueno*, 7 Black Lung Rep. (MB) at 1–340; *Dobrosky v. Director, Office of Workers' Compensation Programs*, 4 Black Lung Rep. (MB) 1–680, 1–684 (1982).[11] We will apply the rule suggested by *Bueno* and *Dobrosky* to anthracosilicosis as well as anthracosis. The A.L.J. thus was entitled to determine such question of fact, whether the anthracosilicosis affecting claimant's hilar lymph nodes constituted statutory pneumoconiosis.

■ The A.L.J. made a factual determination that claimant's anthracosilicosis of the hilar lymph nodes constituted pneumoconiosis, and supported his finding by reference to "Exs. 5, 6 to R–21," the detailed surgical pathology report submitted by Dr. Thomas Abbott and Dr. Abbott's subsequent letter of explanation, attached as exhibits 5 and 6 to the deposition transcript of the performing surgeon. Doc. 12 at 2.

---

**11.** Anthracosis, the condition discussed in *Bueno* and *Dobrosky*, and anthracosilicosis, the affliction of claimant's hilar lymph nodes, are technically not the same condition. Anthracosis is an "accumulation of carbon from inhaled smoke or coal dust in the lungs"; anthracosilicosis is an "[a]ccumulation of carbon and silica in the lungs from inhaled coal dust; the silica content produces fibrous nodules." *Stedman's Medical Dictionary* 85 (5th unabr. law. ed. 1982). Both are included in the definition of pneumoconiosis, 20 C.F.R. § 718.201, utilized by the A.L.J., Tr. at 65.

The review board was not forced to speculate as to the basis of the A.L.J.'s decision. *See Singer v. Peabody Coal Co.*, 5 Black Lung Rep. (MB) 1–408, 1–411 (1983). The A.L.J.'s finding of fact was supported by substantial evidence. The A.L.J.'s written opinion, adequately referring to specific evidence before him, documented that claimant's anthracosilicosis was a contributing factor to his total disability. Thus, the review board erred when it found that evidence of such relationship was "too tenuous" to support the A.L.J.'s findings and his award of benefits.[12]

The order of the review board is REVERSED and the order of the A.L.J. entered April 23, 1985, as amended December 3, 1985, is REINSTATED.

---

**12.** Claimant submitted an application for benefits under the Act in 1980 due to shortness of breath under exertion. The 1980 application was denied because claimant was still working full time. Claimant did not appeal the denial. The application being considered today is a second application, filed July 9, 1982, after claimant's pneumonectomy.

The record contains no evidence that claimant's initial application was deemed abandoned pursuant to 20 C.F.R. § 725.409. However, we find that as a matter of law, had the deputy commissioner been presented with the question, he could only have found that changed circumstances due to the intervening pneumonectomy allowed claimant to resubmit his previously denied application. The A.L.J. stated that the first application was "not viable." Doc. 12 at 2 n. 1. The review board stated that its decision "rendered moot" the question raised by 20 C.F.R. § 725.309(d), whether claimant could reapply for benefits. Doc. 1 at 3 n. 1. Further consideration of either of these statements is unnecessary in light of our evaluation of the changed circumstances underlying claimant's two applications.