896 F.2d 554
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Laura WARD, widow of William Ward, Petitioner-Appellant,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent-Appellee.
 No. 89-3517.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1990.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and THOMAS G. HULL, District Judge.*
 PER CURIAM.
 
 
 1
 Laura Ward appeals from a decision of the Department of Labor Benefits Review Board (Board) affirming an administrative law judge's (ALJ) denial of her claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901, et seq (1982). Finding the decision of the ALJ to be supported by substantial evidence on the record, we affirm.
 
 
 2
 In 1945, at the age of 33, William Ward returned from service in the Second World War and settled in Meally, Kentucky. After marrying Laura Ward, he found work hauling coal with a wagon and two mules from four Meally tipples to private homes in the area. Ward worked a full day hauling coal, ten or more months per year, for 15 years. The record shows only one period of interruption, in 1947, when he worked for two months underground as a miner for the Sammons Coal Company.
 
 
 3
 During the years he hauled from the tipples, Ward was heavily exposed to coal dust. According to his wife's testimony, he came home at night black with dust which penetrated his clothes and entered his eyes, ears, nose, and mouth. Ward gradually developed a persistent cough, and often expelled black phlegm even after being away from the mines for several days.
 
 
 4
 In 1960, gas lines were laid in Johnson County, Kentucky, the tipples shut down, and Ward found alternative employment supervising custodial work at a local school. After losing consciousness on the job, he quit this work sometime in 1962. From this time forward, he was unemployed, spending his days "around the house" with his wife. Laura Ward describes her husband's breathing problems as becoming progressively more severe during the years after he left the mine, to the point where he had difficulty performing tasks involving even minor exertion. Ward appears to have suffered a heart attack in 1972. From that time forward, he was treated for heart troubles, and, according to his wife, was almost totally immobilized due to his medical condition.
 
 
 5
 On September 11, 1980, William Ward filed an application for benefits under Part C of the Black Lung Benefits Act. The claim was denied and forwarded to the Office of Administrative Law Judges (Office of the ALJs) for a formal hearing. Ward died on May 28, 1983, before the scheduled hearing. The cause of his death was listed as a stroke due to atherosclerotic vascular disease.
 
 
 6
 On July 13, 1983, Laura Ward filed a claim for survivor's benefits, which also was denied and appealed to the Office of the ALJs. On July 19, 1984, the Office of the ALJs, apparently unaware of plaintiff's previous claim for survivor's benefits, remanded William's claim to the deputy commissioner to determine whether any eligible survivors intended to pursue the claim. Laura's appeal to the Office of the ALJs was subsequently consolidated with William's remanded claim. A formal hearing was convened on July 8, 1987, and the ALJ issued a decision and order rejecting the claim.
 
 
 7
 The ALJ found that Ward qualified for only two months of employment as a miner under the regulations. He also found that Ward had contracted pneumoconiosis as established by chest x-ray evidence, but that pulmonary function studies, blood gas studies, and medical reports failed to establish either total disability due to pneumoconiosis or death due to pneumoconiosis.
 
 
 8
 Laura Ward appealed these findings to the Benefits Review Board, which, on January 31, 1989, affirmed the denial in an unpublished decision and order. The Board agreed with the ALJ's conclusion that the evidence was insufficient to establish total disability pursuant to 20 C.F.R. Sec. 718.204 or death due to pneumoconiosis pursuant to 20 C.F.R. Sec. 718.205(c). The Board therefore declined to address the ALJ's findings regarding the length of coal mine employment or the cause of William's pneumoconiosis pursuant to 20 C.F.R. Sec. 718.203.
 
 
 9
 The plaintiff moved for the Board to reconsider its denial of relief. In an opinion dated May 17, 1989, the Board again found "the administrative law judge's treatment of the medical opinions of record to be rational and supported by substantial evidence." (App. 63). As before, the Board declined to reach plaintiff's arguments regarding the length of William's coal mine employment or the cause of his pneumoconiosis, inasmuch as the failure to establish total disability precludes an award of benefits under Part 718 regardless of the number of years of coal mine employment. Laura Ward thereupon filed this appeal, alleging that the Board erred in finding that her husband had worked for only two months as a miner and was not totally disabled due to pneumoconiosis at the time of his death.
 
 II.
 
 10
 This court reviews Benefits Review Board decisions for errors of law and adherence to the Board's statutory scope of review. Welch v. Benefits Review Board, 808 F.2d 443, 445 (6th Cir.1986); Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983). The Board is required to affirm an ALJ's finding of fact "if supported by substantial evidence in the record considered as a whole." 33 U.S.C. Sec. 921(b)(3), as incorporated by 30 U.S.C. Sec. 932(a).
 
 
 11
 In order to establish entitlement to black lung survivor's benefits under Part 718 of the regulations, a claimant must establish that the miner suffered from pneumoconiosis, that the pneumoconiosis arose out of coal mine employment, and that either the pneumoconiosis was totally disabling at the time of the miner's death[1] or that the death was caused by the pneumoconiosis. See Mangus v. Director, OWCP, 882 F.2d 1527, 1530-32 (10th Cir.1989); Strike v. Director, OWCP, 817 F.2d 395, 399 (7th Cir.1987); Director, OWCP v. Mangifest, 826 F.2d 1318, 1320 (3rd Cir.1987). The claimant must prove each element by a preponderance of the evidence except to the extent that she is aided by a presumption. Mangifest, 826 F.2d at 1320; 20 C.F.R. Sec. 718.403.
 
 
 12
 Our review of the record establishes that substantial evidence supports the ALJ's decision. The Secretary does not dispute the ALJ's determination that the x-ray evidence was sufficient to support a finding of pneumoconiosis. We proceed, therefore, to review the ALJ's treatment of the evidence concerning the cause of Ward's disability and death.
 
 
 13
 On October 27, 1980, Ward took a pulmonary function test which yielded non-qualifying results. Two more pulmonary function tests, performed on February 20, 1982, and August 25, 1982, however, did result in qualifying values. The February 20 test administrator specified that Ward understood the instructions, that his effort and cooperation were both "fair," and that the test was "good." The August 25 test administrator indicated that Ward's understanding of the instructions was "poor," but that his effort and cooperation were "good." Both tests, however, were invalidated by Dr. Kraman on September 4, 1984--the February 20 test because of Ward's "variable effort" and the August 25 test because of "poor effort." (Director's Exhibit 22).
 
 
 14
 Several blood gas studies are in evidence. One performed on October 27, 1980, produced non-qualifying results, while another, administered on August 25, yielded qualifying values. Dr. Kraman found the August 25, 1980, study invalid, explaining, "no calib. or time to analysis." (Director's Exhibit 22). In addition, over 40 blood gas studies were performed while Ward was hospitalized before his death, many of which reveal qualifying values. Dr. Kraman found these tests invalid as well, writing "no calib. or time to analysis. Also patient was acutely ill (dying) when gases taken: Hardly grounds to establish disability." (Director's Exhibit 21).
 
 
 15
 The ALJ wrote that "in light of Dr. Kraman's invalidation, the ventilatory and blood gas studies are found insufficient to establish total disability under Sec. 718.204." (App. 52). Although Dr. Kraman's stated reasons for invalidating the pulmonary function studies appear inconsistent with the findings of the test administrator, we cannot find that Kraman's invalidation fails to support the conclusion that the ventilatory and blood gas studies should be disregarded as invalid.
 
 
 16
 On October 27, 1980, Ward was examined by Dr. C.J. Hieronymus and Dr. B. Wright. They diagnosed him as having "coal workers' pneumoconiosis" and "small airway disease." (App. 4). The doctors further determined that the diagnosed conditions were related to dust exposure in Ward's employment, although they expressed the opinion that the impairment did "not meet federal black lung disability standards." (App. 4). They further determined that Ward could walk no more than 100 yards, could climb only one eight-yard flight of stairs, and could not lift or carry weight. These findings were listed in response to the following question on a Department of Labor form: "Please describe and explain limitations in the physical activities listed below that may be due to pulmonary disease." (App. 4).
 
 
 17
 The ALJ disposed of the Hieronymus and Wright report with the following sentence: "Drs. Hieronymus and Wright indicated only that there was evidence of mild pulmonary disease." (App. 52).
 
 
 18
 The regulations set forth the standards for evaluating medical evidence of total disability. Specifically, 20 C.F.R. Sec. 718.204(c)(4) provides as follows:
 
 
 19
 [T]otal disability may ... be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment....
 
 
 20
 In this case, the ALJ could properly have concluded that the medical report of Hieronymus and Wright was insufficient to establish that it was Ward's pulmonary condition that caused his disability. The plaintiff suggests that the ALJ should have considered the physician's assessment that her husband could walk only 100 yards, climb only one flight of stairs, and neither lift nor carry any weight. We agree that this evidence ought to have been addressed in the ALJ's decision; however, we do not find that it precludes his finding. Evidence of limited physical capacity may be proof that a respiratory ailment is totally disabling even when the miner suffers from a separate and apparently debilitating medical condition. See Black Diamond Coal Co. v. Benefits Review Board, 758 F.2d 1532 (11th Cir.1985). In this case, however, the doctors clearly indicated in their report that Ward suffered from heart disease, and that the pulmonary impairments he suffered did "not meet federal black lung disability standards." (App. 4). In light of these facts, the ALJ could reasonably have concluded that Ward's physical impairment was the result of his heart condition and not his respiratory ailments.
 
 
 21
 The second medical examination on the record was performed by Dr. John Myers who examined Ward on August 25, 1982. Myers found that Ward exhibited the following physical symptoms:
 
 
 22
 [O]ne inch chest expansion, normal breath sounds, no rales or rhonchi, normal air exchange, no clubbing, cyanosis or edema, and distant heart sounds. He had marked pectus deformity of the chest.
 
 
 23
 (App. 9). Dr. Myers also reviewed Ward's chest x-rays and found that they showed "no evidence of coal workers' pneumoconiosis." He did find, however, that Ward's ventilation studies "showed severe restrictive and moderate obstructive defects in ventilation." Dr. Myers gave the following diagnosis:
 
 
 24
 My diagnosis was COPD with severe restrictive and moderate obstructive defects in ventilation, functional class III. On this basis, he could not perform arduous manual labor. He could perform some forms of normal physical activity. To the best of my knowledge, the x-rays, blood gases, and ventilation studies were performed in accordance with Regulation 718.
 
 
 25
 (App. 9).
 
 
 26
 Regarding Dr. Myers' determination, the ALJ wrote:
 
 
 27
 It appears, however, that Dr. Myers based his opinion on the qualifying ventilatory and blood gas studies that were subsequently invalidated by Kraman.... In light of Dr. Myers['] apparent lack of negative physical findings, his apparent reliance on the invalidated tests, and the vagueness of his statement concerning the miner's physical limitations, his report is found insufficient to establish total disability under Sec. 718.204.
 
 
 28
 (App. 52). The plaintiff does not contest the ALJ's treatment of Dr. Myers' findings in his brief, and, in light of our discussion of the ALJ's decisions with regard to the pulmonary function and blood gas studies, we see no error in the ALJ's decision to disregard Myers' report as based on invalid test results.
 
 
 29
 The final medical opinion on record is that of Dr. Byron Young, the physician attending Ward after his stroke. Young determined the cause of Ward's death to be a stroke, with atherosclerotic vascular disease as a secondary cause. (App. 14). The ALJ was clearly entitled to rely on Dr. Young's report in finding that the plaintiff failed, in the absence of any applicable presumption, to produce "competent medical evidence" that the miner's death was due to pneumoconiosis. 20 C.F.R. Sec. 718.205(a)(1); see also 20 C.F.R. Sec. 718.205(b) and (c).
 
 
 30
 The ALJ's conclusion that, "although the evidence establishes the existence of pneumoconiosis by x-ray, it does not establish total disability" (App. 52) is supported by substantial evidence on the record. Under Part 718 of the Secretary of Labor's permanent regulations, a claimant for survivor's benefits who cannot establish pneumoconiosis as a cause of the miner's total disability at the time of death, or that death was due to pneumoconiosis, cannot prevail regardless of the length of coal mine employment. Consequently, we need not decide whether Mr. Ward engaged in employment covered by the Black Lung Benefits Act when he loaded his cart at the tipple and hauled coal to consumers.
 
 
 31
 The decision of the Benefits Review Board is AFFIRMED.
 
 
 
 *
 Honorable Thomas G. Hull, Chief Judge, United States District Court, Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Section 718.1(a) specifies that benefits are provided
 to miners who are totally disabled due to pneumoconiosis and to certain survivors of a miner who died due to or while totally or partially disabled by pneumoconiosis. However, unless the miner was found entitled to benefits as a result of a claim filed prior to January 1, 1982, benefits are payable on survivors' claims filed on or after January 1, 1982, only when the miner's death was due to pneumoconiosis....
 The Department of Labor apparently concedes that, because William Ward's claim for benefits was merged with his wife's survivor's claim, the claim before the ALJ was not a "survivor['s] claim filed on or after January 1, 1982," and therefore that Ward can prevail without showing a causal relationship between her husband's death and his pneumoconiosis if she shows that at the time of the miner's death the pneumoconiosis was totally disabling. See Brief for Appellee at 11.