Earl DAVIS, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, and Kaiser Steel Company, Respondents.

No. 89–9506.

United States Court of Appeals, Tenth Circuit.

June 20, 1991.

Jonathan Wilderman of Wilderman and Linnet, P.C., Denver, Colo., for petitioner-appellant.

Roger Pitcairn (Jerry G. Thorn, Acting Sol. of Labor; Donald S. Shire, Associate Sol. for Black Lung Benefits; Barbara J. Johnson, Counsel for Appellate Litigation; and Edward O. Falkowski, Atty., with him on the brief), Washington, D.C., for Federal respondent-appellee.

Edwin C. Barnes, of Clyde, Pratt & Snow (Rodney G. Snow, with him on the brief), Salt Lake City, Utah, for Kaiser Steel, respondent-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR, and ANDERSON, Circuit Judges.

SEYMOUR, Circuit Judge.

Earl Davis applied for benefits under the Black Lung Benefits Act (the Act), 30 U.S.C. § 901 et seq. (1988). His claim was denied by an administrative law judge (ALJ), and the denial was affirmed on appeal to the Department of Labor Benefits Review Board (BRB). In his appeal to this court,[1] Davis contends that the decisions of both the ALJ and the BRB were based on an erroneous view of relevant medical evidence. The Director of the Office of Workers' Compensation Programs, United States Department of Labor,[2] has filed a brief in which he agrees with Davis that this evidence was mischaracterized in the administrative proceedings, and he urges that we remand for further proceedings before the ALJ. As set forth below, we adopt in large part the position of the Director and accordingly remand.

■ Davis filed his application for benefits on August 24, 1981. His claim is therefore governed by the permanent regulations promulgated by the Department of Labor, 20 C.F.R. §§ 718.1–.404 (1990), effective on April 1, 1980. See id. § 718.2. To be entitled to benefits under the Act, Davis must prove that he is totally disabled due to pneumoconiosis resulting from his coal mine employment. See Bosco v. Twin Pines Coal Co., 892 F.2d 1473, 1476 (10th Cir.1989) (emphasis omitted).

"Under section 718.305, a miner who was employed in underground coal mines for fifteen years or more, and who is the victim of a totally disabling respiratory or pulmonary impairment, is entitled to a rebuttable presumption that he is totally disabled due to pneumoconiosis. Thus, by showing such an impairment plus fifteen years' work in underground mines, a claimant can establish the requisite causal connection between the disability and pneumoconiosis.

1. We have jurisdiction to review the order of the BRB under section 932(a) of the Act, which incorporates by reference the judicial review provision of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c) (1988). See 20 C.F.R. § 802.410 (1990).

2. Davis named as defendants Kaiser Steel Corporation and the Director. Kaiser Steel does not dispute that it is the responsible coal mine operator under 20 C.F.R. § 725.490–.493 (1990). A responsible coal mine operator is directly liable for the payment of black lung benefits on a claim filed by a miner who worked for it after December 31, 1969. See Bosco v. Twin Pines Coal Co., 892 F.2d 1473, 1477 n. 4 (10th Cir. 1989); Director, O.W.C.P. v. Consolidation Coal Co., 884 F.2d 926, 928–29 & n. 2 (6th Cir.1989). The Director, who is responsible for the administration and enforcement of the Act, is deemed by regulation to be the proper party on behalf of the Secretary of Labor in all review proceedings. See 20 C.F.R. § 802.410(b) (1990).

"A claimant who is entitled to the above presumption also receives the benefit of an additional presumption provided by section 718.302, which states that a miner who has pneumoconiosis and has worked in the mines ten years is entitled to the rebuttable presumption that his pneumoconiosis arose out of such employment. This presumption establishes the necessary link between pneumoconiosis and employment in the mines. A miner with the requisite number of years in the mines may thus satisfy the causal connections among all the elements necessary to support a claim for benefits upon a showing that he is totally disabled by a respiratory or pulmonary impairment."

In this case, Kaiser Steel stipulated at the administrative hearing that Davis had worked at least fifteen years in the mines for purposes of the above-described presumptions, and that Davis suffers from simple pneumoconiosis that arose out of his employment in the mines. Thus, administrative proceedings focused on whether Davis is totally disabled by a respiratory or pulmonary impairment. As set out above, proof of that fact, coupled with the applicable presumptions, would establish Davis' entitlement to benefits under the Act.

The applicable regulation states that a miner is totally disabled if pneumoconiosis prevents him or her from performing usual coal mine work and from engaging in comparable work in the immediate area of her or his residence. *See* 20 C.F.R. § 718.204(b). The regulations also provide medical criteria which, if satisfied, establish such total disability. A miner may show total disability by qualifying pulmonary function tests, *see id.* 718.204(c)(1), by arterial blood-gas tests, *see id.* 718.-204(c)(2), or by a showing of pneumoconiosis combined with medical evidence of cor pulmonale, *see id.* 718.204(c)(3). Of particular significance in the instant case is section 718.204(c)(4), which provides that if total disability is not established by the other medical criteria set out above, "total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents ... the miner from engaging in employment as described in [section 718.204(b)]."

Davis presented evidence at his administrative hearing that he had worked as a longwall mechanic, a longwall being the machine that cuts coal on the face of the mine. His job required frequent walking on a grade carrying approximately thirty pounds of tools, occasional running, and the occasional lifting of 150 to 200 pounds. He was constantly exposed to coal dust and worked in a high risk coal dust area about fifty-percent of the time. The record contains evidence that in the years immediately preceding Davis' retirement, he required help with his job and found it increasingly difficult to keep up the pace at which he was required to work. Medical evidence tended to show that Davis suffers from pneumoconiosis and from industrial bronchitis which is exacerbated by exposure to coal dust.

The ALJ determined that Davis had not shown disability under 718.204(c)(1), (2), or (3), and Davis does not argue to the contrary on appeal. The ALJ then considered whether Davis had established disability under 718.204(c)(4) through a reasoned medical judgment, reviewing four written medical reports as well as the testimony of Dr. William Sadler on behalf of Davis and the testimony of Dr. Robert Farney on behalf of Kaiser Steel. The ALJ described their testimony as follows:

"Dr. Sadler testified that claimant had coal workers' pneumoconiosis by x-ray and history; that he had slowed down in his last years at work, according to his history; that he probably had industrial bronchitis related to this coal dust exposure; and that claimant's current symptoms 'are probably attributable solely to age.' (TR 82.)

"Dr. Farney testified essentially to the same thing, except that he was not sure claimant had pneumoconiosis. (TR 103.) In his opinion claimant could perform very strenuous activity from a pulmonary point of view. (TR 112.) He admit-

ted that the claimant's symptoms might worsen with further dust exposure (TR 121.) and particularly that claimant would most likely cough more if exposed to dust. (TR 123.) He would not recommend to claimant (or to anyone) that he work in coal dust. (TR 126.)"

Rec., vol. II, at 57–58.[3] Based on his view of this medical evidence, the ALJ denied Davis' claim for benefits, stating:

"I cannot find that claimant is currently disabled from doing his usual coal mine work. I do find that it is contraindicated for claimant to return to the dusty conditions of underground mining because of his pneumoconiosis and his industrial bronchitis. However, this is not sufficient ground upon which to award benefits. *Carter v. Beth–Elkhorn Corporation*, 7 BLR 1–15, 1–17 (1984), *Coleman v. Kentland Elkhorn Coal Co.*, 5 BLR 1–260 (1982)."

Rec., vol. II, at 58.

Davis sought reconsideration, arguing that Dr. Sadler did not merely state that coal dust exposure was inadvisable but that exposure had resulted in disability as well. The ALJ denied reconsideration because he believed himself bound by the decision of the BRB in *Coleman*.

"As an administrative law judge, I am bound by the decisions of the Board, unless a higher court has declared a different rule. Claimant asserts and employer does not dispute that the Circuit Courts of Appeal have not adopted *Coleman*. On the other hand, the parties have cited no case, and I have found none, which rejects *Coleman*. I note that the courts have rejected other Board interpretations of § 727.203(b)(2), which was the section involved in *Coleman*. See, e.g., *Sykes v. Dir. Office of Workers' Comp. Programs*, 812 F.2d 890 (4th Cir.1987); *York v. Benefits Review Bd.*, 819 F.2d 134 (6th Cir.1987); *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162, n. 5 (3rd Cir.1986). None of these cases, however, speak to the situation here, where the claimant's subjective complaints are not corroborated by medical evidence, but where return to coal mine dust exposure would, according to the medical evidence I credit, bring on disabling symptoms. Therefore, I feel bound by *Coleman*, and must leave changing its rule to the Board and the courts."

Rec., vol. II (Order Denying Reconsideration, Issued August 5, 1987, at 2). Davis unsuccessfully sought review before the BRB, which held that "substantial evidence supports the administrative law judge's finding that Dr. Saddler [sic] merely opined that claimant's return to coal mine employment is contraindicated." *Id.* at 2.

In this appeal, Davis contends the ALJ erred in finding that Dr. Sadler stated only that further coal dust exposure was inadvisable. Although Davis does not take issue with the BRB position that a miner is not disabled if exposure is merely inadvisable, Davis argues that Dr. Sadler stated exposure would be disabling. The Director joins with Davis in asserting that the ALJ and the BRB mischaracterized Dr. Sadler's testimony.

■ The BRB may not uphold the ALJ's findings of fact and conclusions of law unless they are "supported by substantial evidence in the record considered as a whole [and] in accordance with the law." 20 C.F.R. § 802.301(a) (1990). " 'On review [of a black lung benefits case], the court of appeals must scrutinize the [review board's] decision for errors of law and for adherence to the substantial evidence standard governing the Board's review of the administrative law judge's factual determinations.' " *Mangus v. Director, O.W.C.A.*, 882 F.2d 1527, 1532 (10th Cir.1989) (per curiam). We have carefully reviewed the record in this case and we conclude the BRB erred in holding that the ALJ's characterization of Dr. Sadler's opinion is supported by substantial evidence. The thrust of Dr. Sadler's testimony was that Davis suffers from pneumoconiosis and industrial

---

**3.** The administrative record consists of three volumes: the transcript of the hearing before the ALJ, which we shall refer to as volume I, the formal record, which we shall refer to as volume II, and the exhibits of Kaiser Steel.

bronchitis which, when coupled with exposure to coal dust, renders him unable to perform the physical exertions required in his mine employment. In rendering his ultimate opinion as to Davis' capabilities, Dr. Sadler stated unequivocally that Davis is "not capable of performing his usual coal-mining work." Rec., vol. I, at 58. Such a statement clearly goes well beyond an opinion that coal dust exposure is inadvisable. In our view, Dr. Sadler's testimony must be characterized as expressing the opinion that coal dust exposure is disabling with respect to Davis' coal mine work. Accordingly, we agree with Davis and the Director that the ALJ's view of this critical testimony is erroneous.

We next turn to the Director's argument as to the role testimony such as that of Dr. Sadler should play in assessing an application for black lung benefits. In considering the argument of the Director, we begin with the language of the Act, which provides in pertinent part:

> "The term 'total disability' has the meaning given it ... by regulations of the Secretary of Labor ..., except that—
>
> (A) in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time...."

30 U.S.C. § 902(f)(1)(A). Pursuant to this statutory directive, the Secretary promulgated section 718.204(b), under which a miner is disabled if pneumoconiosis prevents the miner:

> "(1) From performing his or her usual coal mine work; and
>
> "(2) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time."

20 C.F.R. § 718.204(b). As discussed above, the regulations further provide that a claimant may establish total disability by a reasoned medical opinion that the miner's respiratory or pulmonary condition prevents the miner from engaging in employment as described in section 718.204(b). See 20 C.F.R. § 718.204(c)(4).

In this case, we have concluded that Dr. Sadler's testimony, if accepted by the ALJ, would establish that Davis is not able to perform his usual coal mine work. The Director asserts that such a showing is sufficient to make out a prima facie case of total disability, thus shifting the burden to Kaiser Steel to prove that "in light of Davis' age, education, and work experience or skills, Davis is capable of engaging in comparable and gainful work that is available in the immediate area of his residence." Brief of the Director, at 32. In support of this assertion, the Director points to that provision of the Act in which Congress directs the Secretary of Labor that the regulations governing the award of black lung benefits "shall not provide more restrictive criteria than those applicable under section 423(d) of title 42 [Social Security Act]." 30 U.S.C. § 902f(1)(C). A claimant under the Social Security Act bears the burden of establishing a disability, as does a black lung benefits claimant. However, once a Social Security Act applicant makes a prima facie showing by proof that she or he can no longer do her or his past work, the burden shifts to the Secretary to show that the claimant nonetheless has the capacity to perform substantial gainful employment. See, e.g., Turner v. Heckler, 754 F.2d 326, 328 (10th Cir.1985) (quoting Channel v. Heckler, 747 F.2d 577, 579 (10th Cir.1984)). The Director asserts that the portion of the Black Lung Benefits Act quoted above requires the same shift in burdens here.

We must give considerable weight to an agency's construction of the statutory sections it is entrusted to administer. See Chevron, U.S.A., Inc. v. Natural Resource Defense Counsel, Inc., 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (where the statute is

silent or ambiguous with respect to a specific issue, the court defers to the agency's permissible construction thereof). In addition, we should give "the Secretary's interpretation of the black lung regulations substantial deference." *Lukman v. Director, O.W.C.P.*, 896 F.2d 1248, 1251 (10th Cir. 1990). We conclude that the Director's construction of the Act and the relevant regulations is a permissible one, particularly in light of Congressional acquiescence in the analogous construction of the Social Security Act and its regulations, which Congress specifically referenced in the Black Lung Benefits Act. The legislative history of this provision bolsters the Director's position:

> "By providing that criteria established under this definition shall not be more restrictive than those applicable under Section 223(d) of the Social Security Act, this section assures that due weight shall be given to such factors as age, education and previous work experience in the application of the revised definition of total disability, *in order to insure as broad coverage as possible.*"

S.Rep. No. 743, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin. News 2305, 2321 (emphasis added). Accordingly, we agree with the Director that a miner who establishes that the mine-related lung disease prevents her or him from performing usual coal mining work makes out a prima facie case of total disability. The burden then shifts to the employer to show that comparable and gainful jobs which the miner could perform actually exist and are available in the area of her or his residence.

The Director further contends that this case should be remanded to the ALJ. The Director argues that because the ALJ erroneously believed Dr. Sadler's testimony to be insufficient as a matter of law, the ALJ did not indicate whether he found the testimony to be documented and reasoned within the meaning of section 718.204(c)(4), nor did he weigh it against conflicting evidence as required by that regulation. The Director asserts that remand also is appropriate to allow the ALJ to consider whether, should he determine that Davis has established a prima facie case, Kaiser Steel has rebutted that showing by proof of available alternative comparable employment. The Director states his belief that it would be appropriate to allow Kaiser Steel to supplement the record in this regard.

Davis contends vigorously that a remand is not appropriate. He first argues that a remand is not necessary to allow the ALJ to reconsider Dr. Sadler's opinion, contending the ALJ clearly stated that he found Dr. Sadler's testimony credible and that it outweighed conflicting evidence. We agree. The ALJ specifically stated in denying reconsideration that he credited Dr. Sadler's evidence; the only reason the ALJ offered for rejecting that testimony, either in his original opinion or in denying reconsideration, was his belief that it was not legally sufficient under the BRB decisions he viewed as controlling. Accordingly, we conclude that Davis has established a prima facie case through Dr. Sadler.

■ Davis also argues against remanding to allow the ALJ to consider whether Kaiser Steel shouldered its burden with respect to proof of alternative available employment, and to take additional evidence on the issue. Davis contends that it is unfair to allow Kaiser Steel a second bite at the apple at this late date. We also find this aspect of the Director's proposed remand troubling. However, we have found no case addressing the unusual circumstances present here that would have alerted Kaiser Steel to the requirement that it had the burden to offer this evidence. Moreover, the Director did not make his position known at any point in the administrative proceedings. Under these circumstances, we conclude that it would be unfair to deny Kaiser Steel the opportunity to offer evidence. The fault, if any, for the delay brought on by additional proceedings in this case lies with the Director in failing to bring his position to the attention of either the ALJ or the BRB in a timely manner, not Kaiser Steel. We agree with the Director that the procedure he recommends is necessary to produce a decision based on the weight of the evidence.

Accordingly, we remand to the ALJ for further proceedings in light of this opinion.