**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 31 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

PITTSBURG & MIDWAY COAL
MINING COMPANY; MOUNTAIN
STATES MUTUAL CASUALTY
COMPANY,

Petitioners,

v.

JACOB SANCHEZ and DIRECTOR,
OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT
OF LABOR,

Respondents.

No. 00-9538
(No. 99-1214-BLA)
(Petition for Review)

ORDER AND JUDGMENT   *

Before **HENRY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioners Pittsburg & Midway Coal Mining Co. and Mountain States Mutual Casualty Co. seek review of the decision by the United States Department of Labor Benefits Review Board (Board) affirming an award of black lung benefits to respondent Jacob Sanchez. Because the decision is supported by substantial evidence and the Board committed no legal errors, we affirm.

This case has a substantial procedural history over the last twelve years which will not be repeated here. The parties have submitted medical reports from a multitude of doctors, each with differing conclusions. After reversing and remanding the Administrative Law Judge's (ALJ) decision on three occasions, the Board affirmed the fourth decision granting benefits to Sanchez. Petitioners appeal, arguing that the Board erred in affirming the decision because it is not supported by substantial evidence and the ALJ committed several legal errors.

We review the Board's decision "for errors of law and for adherence to the substantial evidence standard governing the Board's review of the [ALJ's] factual determinations." *Maddaleni v. Dir., OWCP*, 961 F.2d 1524, 1525 (10th Cir. 1992) (quotations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hansen v. Dir., OWCP*, 984 F.2d 364, 368 (10th Cir. 1993) (quotation omitted). In

conducting our review, we cannot reweigh the evidence, but may only inquire whether evidence exists to support the ALJ's findings of fact. *Id.* "Our review . . . must be made in light of the premise that the Act is intended to be remedial in nature, and doubts should be resolved in favor of the disabled miner. . . ." *Bosco v. Twin Pines Coal Co.*, 892 F.2d 1473, 1476 (10th Cir. 1989) (quotations omitted).

Benefits under the Act are available to claimants who are totally disabled due to pneumoconiosis arising out of coal mine employment. 30 U.S.C. § 901(a). A claimant must first show that he suffers from pneumoconiosis as that term is defined in 20 C.F.R. § 718.201, and that the pneumoconiosis arose out of coal mine employment, *id.* § 718.203(a). The claimant must then show that he is totally disabled by a respiratory or pulmonary impairment, *id.* § 718.204(a), and that the pneumoconiosis is "at least *a contributing cause*" of the disability, *Mangus v. Dir., OWCP*, 882 F.2d 1527, 1531-32 (10th Cir. 1989).[1] Total disability means that the impairment prevents the claimant from performing his usual coal mine work and from engaging in other comparable and gainful work available in the immediate area of his residence. 20 C.F.R. § 718.204(b). The

---

[1] The regulations have since been amended to require a showing that the miner's pneumoconiosis is a "substantially contributing cause" of the miner's totally disabling respiratory impairment. *See* 20 C.F.R. § 718.204(c)(1). As petitioners concede, see Opening Br. at 15-17, we apply the *Mangus* causation standard that was in effect when Sanchez filed for benefits in 1988.

claimant has the burden of showing inability to perform his usual coal mine work; if he does so, the burden shifts to the employer to show the availability of other appropriate work. *Davis v. Dir., OWCP*, 936 F.2d 1111, 1116 (10th Cir. 1991).

Petitioners argue first that the ALJ erred in finding that Sanchez suffers from pneumoconiosis, arguing that Dr. Slonim's report was so flawed that it could not be relied upon, and that none of the other doctors diagnosed Sanchez as suffering from pneumoconiosis. Under the regulations, pneumoconiosis may be shown either under a "clinical" or a "legal" standard. *See* 20 C.F.R. § 718.201(a)(1)-(2).

Although the ALJ rejected Dr. Slonim's opinion that Sanchez suffers from clinical pneumoconiosis, based on his reliance on an unreadable x-ray, the ALJ accepted Dr. Slonim's finding that Sanchez also suffers from chronic industrial bronchitis. This diagnosis was corroborated by another physician, Dr. Van As, and a third physician stated that he could not rule out chronic industrial bronchitis. Further, in light of Sanchez's minimal smoking history (2-4 cigarettes a day, quitting in 1950), and the gray/black color of his sputum, the ALJ agreed with Drs. Slonim and Van As that Sanchez's chronic bronchitis arose from his coal mine employment and therefore constituted "legal" pneumoconiosis pursuant to § 718.201(a)(2). After reviewing the record we agree that there is substantial

evidence to support this factual finding, and that the alleged flaws in Dr. Slonim's report do not undermine his finding of chronic industrial bronchitis.

Petitioners argue next that the evidence does not support a finding that Sanchez has a totally disabling respiratory impairment. Because their arguments seem to indicate that the totally disabling impairment must arise from Sanchez's employment, we clarify that there are two steps to this process. The first step is to determine whether Sanchez has *any* respiratory impairment that prevents him from working, even if the inability to work is caused primarily by a condition unrelated to his employment. *See generally id.* § 718.204(a), (b)(1). If so, we then examine whether substantial evidence supports the ALJ's finding that Sanchez's chronic industrial bronchitis contributed to his respiratory impairment. *See Mangus*, 882 F.2d at 1530-32.

Total disability may be shown in four ways, two of which are relevant here: through blood-gas tests, or through a physician's reasoned medical judgment. *See* 20 C.F.R. § 718.204(b)(2)(ii), (iv). As with the existence of pneumoconiosis, there is conflicting evidence concerning Sanchez's total disability.

Between 1987 and 1990, Sanchez's various blood-gas tests produced both qualifying and non-qualifying results under § 718.204(b)(2)(ii). On March 15, 1990, his blood-gas test results met the regulatory criteria for showing a totally disabling impairment. The ALJ did not rely on this test result alone, however, but

also examined the physicians' reports regarding Sanchez's abilities. The only report that actually quantified Sanchez's functional abilities based on his respiratory impairment was that of Dr. Phelps, who opined that Sanchez could walk two to three blocks slowly, climb one flight of stairs, lift up to fifty pounds, and carry fifty pounds for fifty feet. The ALJ concluded that these restrictions would prevent Sanchez from performing his previous work as a brattice man, cable handler, and bolter. The ALJ also relied on Dr. Repsher's deposition testimony regarding Sanchez's "inability to work or exercise," which he attributed to heart disease and "lung disease of the obese." *See* Admin. R. Vol. I, Repsher Depo. at 54.

Petitioners argue first that the ALJ erred in finding Sanchez totally disabled because the only physician who rendered such an opinion was Dr. Slonim, whose opinion rested on the unreadable x-ray. The ALJ did not rely on Dr. Slonim's opinion, however. Instead, the ALJ relied on Sanchez's qualifying blood-gas test results and his inability to perform his "usual coal mine work." 20 C.F.R. § 718.204(b). Further, the ALJ properly determined that Sanchez was unable to perform his former work by comparing his physical limitations, as identified by Dr. Phelps, with the exertional requirements of those jobs. *See Shelton v. Old Ben Coal Co.*, 933 F.2d 504, 507 (7th Cir. 1991) (holding it was not essential for physician to state that claimant was totally disabled when his report listed

claimant's physical limitations, the ALJ was then required to compare the exertional requirements of claimant's coal mine work with his capabilities).

Petitioners argue next that the ALJ erred in using Dr. Phelp's findings but rejecting the doctor's opinion that Sanchez's impairment did not arise out of his employment. The question of Sanchez's degree of impairment, however, is separate from the question of what caused the impairment, and thus the ALJ did not impermissibly pick and choose among dependent findings. *See Twin Pines Coal Co. v. U.S. Dep't of Labor*, 854 F.2d 1212, 1219 n.8 (10th Cir. 1988) (holding ALJ could not accept one finding in doctor's opinion but reject a connected finding regarding claimant's impairment).

Petitioners also argue that there is no evidence in the record to support the ALJ's findings that Sanchez's former jobs were "strenuous," and that the job requirements exceeded Sanchez's physical capabilities. Because this issue was not raised to the Board, we will not address it on review. *See McConnell v. Dir., OWCP*, 993 F.2d 1454, 1460 n.8 (10th Cir. 1993); *Big Horn Coal Co. v. OWCP, U.S. Dep't of Labor*, 897 F.2d 1052, 1054 (10th Cir. 1990). [2]

---

[2] We note, however, that the requirements of a particular coal mine job might be a proper subject of official notice as a fact within the agency's expertise. *See de la Llana-Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994). Petitioners do not contend that the ALJ's characterization of Sanchez's former work as strenuous and beyond his capabilities was incorrect, nor do they indicate that they could have presented evidence rebutting this finding. *See Maddaleni*,

(continued...)

Finally, petitioners argue that the ALJ incorrectly determined that Sanchez's pneumoconiosis contributed to his inability to perform his past work. The only two physicians who offered an opinion on this issue were Dr. Slonim, who opined that Sanchez's employment-related respiratory condition contributed to his disability, and Dr. Repsher, who opined that Sanchez's respiratory impairment was caused solely by his obesity.

The ALJ examined these two opinions and concluded that Dr. Slonim's opinion was more reliable, based on his specialization in black lung diseases, his examination of approximately 1500 miners, his extensive background in the field of black lung diseases and his numerous publications, his repeated examinations of Sanchez, and his physical findings. The ALJ rejected Dr. Repsher's analysis because he had examined only three to four hundred miners, he specialized in asbestosis, and, most importantly, because he failed to recognize that Sanchez suffered from chronic industrial bronchitis, thereby precluding an opinion that this bronchitis contributed to Sanchez's respiratory impairment. "[T]he task of weighing conflicting medical evidence is within the sole province of the ALJ." *Hansen*, 984 F.2d at 368. The record supports the ALJ's analysis, and therefore

---

[2](...continued)
961 F.2d at 1525-26; 5 U.S.C. § 556(e).

the Board did not err in affirming the finding that Sanchez's chronic industrial bronchitis contributed to his total respiratory impairment.

The decision by the Benefits Review Board is AFFIRMED.


Entered for the Court


Michael R. Murphy
Circuit Judge